# Exhibit 1

# Exhibit A

Kevin Abramowicz, Bar No. 320659
Kevin Tucker, Bar No. 312144
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
T. (412) 223-5740
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com



*Filed and Attested by the
Office of Judicial Records
30 DEC 2022 12:42 pm
S. RICE*

*Counsel for Plaintiff and the Putative Class*

| | |
|---|---|
| STEVEN CHECCHIA, individually and as a representative of the Class, | PHILADELPHIA COUNTY COURT OF COMMON PLEAS TRIAL DIVISION |
| Plaintiff, | |
| v. | CLASS ACTION |
| SOLO FUNDS INC., | Case No. _____ |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT – CLASS ACTION

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served by entering a written appearance personally or by attorney, and by filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-1701

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparecencia escrita o en persona o con un abogao y entregar a la corte en forma escrita sus defenses o sus objecoines a las demandas en contra de su persona. Sea avisado que si usted no se defiende la corte tomara medidas y puede continuar la demandaen contra suya sin previo aviso o notificacion. Ademas la corte puede decidira favor del demandante y require que usted cumplacon todas las provisiones de esta demanda. Usted puede perder dinero or sus propriedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONOA LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE.

ASSOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Informacion Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107, (215) 238-1701

Plaintiff Steven Checchia ("Plaintiff" or "Checchia"), individually and on behalf of all others similarly situated, brings this action against Defendant Solo Funds Inc. ("Defendant" or "Solo"), and alleges as follows:

## NATURE OF THE ACTION

1.      This case seeks damages, attorneys' fees, and costs against Solo for violations of the: Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq.*; Loan Interest and Protection Law ("LIPL"), 41 P.S. §§ 101, *et seq.*; and Consumer Discount Company Act ("CDCA"), 7 P.S. §§ 6201, *et seq.*

## JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction under 42 Pa. C.S. § 931.

3.      The Court has personal jurisdiction over Defendant under 42 Pa. C.S. § 5301.

4.      Venue is proper under Pa. R. Civ. P. 2179 because Defendant regularly conducts business in this county.

## PARTIES

5.      Steven Checchia is a person residing in Delaware County, Pennsylvania.

6.      Solo is a technology company headquartered in Los Angeles, California.

7.      Solo is not a bank and is not licensed under any Pennsylvania statute.

8.      Solo makes loans or advances to Pennsylvania consumers over the internet.

## FACTUAL ALLEGATIONS

*Solo's Lending Practices*

9.      Solo owns and operates a lending app called "Solo."

10.     The Solo app claims to connect investors who wish to fund advances to consumers who wish to obtain advances.

1

Case ID: 221202685

11. The app allows consumers to request advances of up to $500.00.

12. Prior to June 25, 2021, the advances had terms between 5 and 15 days.

13. On and after June 25, 2021, the advances had terms of up to 35 days.

14. Solo claims consumers do not have to pay money to obtain advances using the Solo app, but this is untrue.

15. To obtain an advance through the Solo app, consumers enter the amount they seek and the term to repay that amount.

16. Consumers are then asked if they wish to pay money to obtain their advance.

17. Specifically, consumers are asked if they wish to "tip" the investor that funds their advance, and if they wish to "donate" to Solo for issuing their advance.

18. Solo recommends that consumers pay 21% of their advance to ensure the advance is funded, 12% of which Solo recommends paying its investor and 9% of which Solo recommends paying Solo itself.

19. Although consumers can theoretically obtain an advance without paying money, in practice, consumers cannot obtain an advance through the Solo app without agreeing to pay money to obtain the advance.

20. For example, from June 2018 to August 2021, 100% of Connecticut residents paid money to obtain an advance using Solo's app. *In re Solo Funds Inc.*, NMLS #1909701, ¶ 14 (May 4, 2022) (attached as Exhibit A).

21. The "tips" and "donations" consumers must pay to obtain an advance are costly.

22. For example, a $100.00 cash advance with Solo's suggested 21% payment and a two-week repayment scheduled yields a 547.50% annual percentage rate ("APR").

Case ID: 221202685

23. The same $100.00 cash advance with a five-day repayment schedule yields a 1,533% APR.

24. Rather than truthfully disclose the cost of its advances, Solo misrepresents that its advances cost nothing.

25. Before issuing consumers an advance, Solo drafts and completes a promissory note and Truth-in-Lending Act ("TILA") disclosure, which represent that the consumer's advance has a $0.00 Finance Charge and a 0% APR.

26. This representation is false because the advances issued through the Solo app have significant costs.

27. For example, from June 2018 to May 2022, the most common principal amount for advances issued in Connecticut was $100.00 and the average amount consumers agreed to pay to obtain this advance was $31.00 ($21.00 as a "tip" to the investor that funded the advance, and $10.00 as a "donation" to Solo for issuing the advance), which yielded APRs from 43% to 4,280%. *In re Solo Funds Inc.*, NMLS #1909701, ¶¶ 18, 19 (May 4, 2022).

28. After representing that consumers are obtaining advances at no cost, despite the high cost of Solo's advances, Solo issues its advances to consumers.

29. Solo requires its investors to set up an account at Evolve Bank & Trust, which has a preexisting relationship with Solo.

30. Once an investor places funds in this account, Solo issues advances to consumers.

31. But before issuing an advance, Solo requires the investor to pay the Solo "donation" on behalf of the consumer.

32. Solo keeps this amount regardless of whether an advance is repaid.

Case ID: 221202685

33. Once repayment of an advance is due, Solo deducts the full amount of the advance from the consumer's account or payment card, along with any "tip" to the investor and any "donation" to Solo.

34. After that, Solo deposits the payment in the investor's Evolve Bank & Trust account.

35. If a consumer fails to pay, Solo commences collection attempts against the consumer.

36. If these attempts are successful, Solo retains approximately 20% of the amount to be repaid as a "recovery fee."

37. If Solo is unsuccessful, Solo refers consumers to collection agencies.

38. If these attempts are successful, the collection agencies are permitted to retain 30% of the amount to be repaid.

39. Solo also charges late fees, which are assessed at 15% of the principal of an advance and which are generally split between Solo and its investors.

40. Solo also charges several other fees on late advances, including administrative fees and synapse transaction fees.

41. At no point are investors permitted to communicate with consumers.

42. In fact, an investor's only function is deciding whether to fund a loan.

43. Solo assists investors in doing so by providing a proprietary score to evaluate the creditworthiness of consumers and by displaying the amount of "tips" and "donations" consumers have agreed to pay to obtain an advance.

44. Other than funding the advances that Solo issues through its app, Solo controls all other aspects of the lending transaction.

Case ID: 221202685

45.     For example, Solo controls the design, branding, and intellectual property of its credit product; Solo creates and completes the promissory notes and TILA disclosures that govern its advances and has sole control over the contents of these documents; Solo controls the number of advances consumers can obtain at a single time and limits that number to a single advance; Solo controls the principal amount consumers can obtain and limits that amount to $500.00; Solo controls the repayment terms and limits the terms to no more than 35 days; Solo solicits consumers to use its app; Solo solicits investors to fund the advances Solo issues through its app; Solo gives its users proprietary credit scores that Solo develops; Solo issues advances; Solo is responsible for obtaining repayment of advances; Solo charges, collects, and receives the "donations" and "tips" consumers must pay to obtain advances; Solo is the sole point of contact for consumers that use the app and obtain advances through the app.

*Solo's Lending Practices Are Unlawful*

46.     Solo and the investors Solo uses to facilitate its lending scheme are not banks.

47.     The default interest rate that non-banks entities in Pennsylvania can charge is 6% simple interest per year. 41 P.S. § 201(a).

48.      Non-banks, however, can exceed this default rate, and can charge, collect, contract for, or receive interest, fees, and other charges that, in the aggregate, exceed 6% per year, if they obtain a license under the CDCA. 7 P.S. § 6203.

49.     If a non-bank obtains such a license, it can charge, collect, contract for, or receive about 24% interest per year, along with other fees and charges. *Id.* §§ 6213, 6217.1.

50.     Solo and its investors, however, are not licensed under the CDCA.

Case ID: 221202685

51.     But even if they were, the fees Solo charges, collects, contracts for, and recieves far exceed the aggregate amount of interest, fees, and other charges CDCA licensees are authorized to charge, collect, contract for, or receive.

52.     Solo may argue that the fees it charges, collects, contracts for, or receives do not constitute interest because they are voluntary "tips" or "donations," but because they are made for the use of money, these fees are interest, regardless of the term Solo uses to describe them.

53.     Pennsylvania courts have long held that attempts to evade Pennsylvania's interest rate laws are unlawful. *Simpson v. Penn Disc. Corp.*, 5 A.2d 796, 798 (Pa. 1939) (citations and quotation marks omitted) ("The statute against usury forms a part of the public policy of the state and cannot be evaded by any circumvention or waived by the debtor[.] It is immaterial in what form or pretence the usurious interest is covered in the contract[.] As usury is generally accompanied by subterfuge and circumvention of one kind or another to present the color of legality, it is the duty of the court to examine the substance of the transaction as well as its form . . . [.] It is, indeed, wholly immaterial under what form or pretence usury is concealed, if it can by any means be discovered our courts will refuse to enforce its payment."); *see, e.g.*, *Walnut Disc. Co. v. Weiss*, 208 A.2d 26, 28 (Pa. Super. 1965) (looking through form of transaction, evaluating its substance, and finding it illegal); *Saunders v. Resnick*, 16 A.2d 676 (Pa. Super. 1940) (same); *Moll v. Lafferty*, 153 A. 557, 558-59 (Pa. 1931) (same); *see also Scott v. Lloyd*, 34 U.S. 418, 446-47 (1835) ("The ingenuity of lenders has devised many contrivances, by which, under forms sanctioned by law, the [usury] statute may be evaded. . . . Yet it is apparent, that if giving this form to the contract will afford a cover which conceals it from judicial investigation, the [usury] statute would become a dead letter. Courts, therefore, perceived the necessity of disregarding the form, and examining into the real nature of the transaction.").

Case ID: 221202685

54.     Solo cannot evade Pennsylvania law by relabeling interest as a "donation" or "tip."

55.     Additionally, that Solo's "tips" and "donations" are purportedly voluntary does not mean they are not usurious, as "[t]he payment of usurious interest is usually voluntary." *Marr v. Marr*, 20 A. 592, 593 (Pa. 1885); *see also Stock v. Meek*, 221 P.2d 15, 20 (Cal. 1950) ("The theory of [a usury] law is that society benefits by the prohibition of loans at excessive interest rates, even though both parties are willing to negotiate them. Accordingly, 'voluntary' payments of interest do not waive the rights of the payors.").

56.     The Pennsylvania legislature passed usury laws specifically to prevent the types of schemes at issue here. *Smith v. Mitchell*, 616 A.2d 17, 20 (1992) (stating purpose of usury laws is "to protect the citizenry of this Commonwealth from being exploited at the hands of unscrupulous individuals seeking to circumvent the law at the expense of unsuspecting borrowers who may have no other avenue to secure financial backing.") (emphasis in original).

57.     But even if Solo's fees and charges are not interest, the CDCA prohibits charging, collecting, contracting for, or receiving interest, fees, or any other charges that, in the aggregate, exceed 6% simple interest per year. 7 P.S. § 6203.

58.     This limitation applies to any type of cost imposed by a covered entity, regardless of whether the cost qualifies as interest or is charged on the amount actually loaned or advanced. *See, e.g.*, *Pa. Dep't of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 760-62 (Pa. 2008) (applying CDCA aggregate limit to a monthly participation fee).

59.     By engaging in the business of negotiating, making, or arranging loans or advances, and by charging, collecting, contracting for, and receiving fees "tips," "donations," and other fees that, in the aggregate, exceed 6%, Solo is charging, collecting, contracting for, and receiving amounts it cannot lawfully charge, collect, contract for, or receive. 7 P.S. § 6203.

Case ID: 221202685

*Solo's Lending Practices Harm Pennsylvania Consumers*

60.    The advances Solo issues through the Solo app are payday loans, which have been repackaged in a user-friendly app, which are deceptively rebranded as no-cost advances, and which Solo falsely and misleadingly represents as having 0% APRs.

61.    The myriad harms caused by payday loans are well documented.

62.    Payday loans are a type of "balloon" loan, which means the principal and any fee, interest, or other charge are paid in a single amount at a specified time.

63.    Most payday loans are due to be repaid on a consumer's next payday, which is typically two weeks or less from when the loan is obtained.

64.    The advances issued through Solo's app similarly require payment in 35 days or less and require full payment of the principal and any fees, "tips," or "donations" at the time an advance is due to be repaid.

65.    Payday loans, like Solo's advances, can become debt traps that lead to a cycle of dependency and reborrowing.

66.    Traditional payday loans, like Solo's advances, have triple digit APRs and are the most expensive form of credit.

67.    Due to the cost of these loans, consumers generally are unable to pay them back on time and are forced to take out another loan from the same or a different payday lender.

68.    Unlike traditional payday lenders, which disclose the cost of their loans in terms of APR before a consumer obtains credit, Solo does not disclose the cost of its advances in terms of APR before, during, or after a consumer obtains credit.

69.    In fact, Solo falsely and misleadingly represents that its advances have no finance charges and have 0% APRs.

Case ID: 221202685

70.     Because of this, most borrowers are wholly unaware that they are agreeing to obtain credit at triple digit APRs, or that there are far cheaper forms of credit available. *See, e.g.*, Cyrus Farivar, *Millions use Earnin to get cash before payday. Critics say the app is taking advantage of them*, NBC News (July 26, 2019), https://www.nbcnews.com/tech/internet/millions-use-earnin-get-cash-payday-critics-say-app-taking-n1034071 (detailing story of cash advance app user who had no idea her loan or advance had a triple digit APR).

71.     Simply put, Solo's business takes advantage of consumers' lack of awareness of how Solo's fees add up to make the advances facilitated through the Solo app difficult to repay and more costly than other forms of credit.

72.     As one customer of a similar cash advance app explained:

> Earnin didn't charge Raines a fee, but asked that he "tip" a few dollars on each loan, with no penalty if he chose not to. It seemed simple. But nine months later, what was originally a stopgap measure has become a crutch.

> "You borrow $100, tip $9, and repeat," Raines, a highway-maintenance worker in Missouri, told me. "Well, then you do that for a bit and they raise the limit, which you probably borrow, and now you are in a cycle of get paid and borrow, get paid and borrow." Raines said he now borrows about $400 each pay cycle.

Sidney Fussell, *The New Payday Lender Looks a Lot Like the Old Payday Lender*, The Atlantic (Dec. 18, 2019), https://www.theatlantic.com/technology/archive/2019/12/online-banking-lending-earnin-tip/603304/.

73.     Because payday loans, like the advances Solo issues through the Solo app, can trap consumers in cycles of debt, the Pennsylvania legislature made this form of credit illegal in 1937 by passing the CDCA, which, at most, allows for APRs ranging from approximately 24% to 29% (depending on the term and size of a loan and the fees a lender charges) for licensed entities, 7 P.S. §§ 6213, 6217.1, and limits APRs to no more than 6% for unlicensed entities, *id.* § 6203; 41 P.S. § 201(a).

Case ID: 221202685

74. By charging, collecting, and receiving fees that yield triple and quadruple digit APRs, Solo traps many Pennsylvania residents in a detrimental cycle of debt, making them dependent on Solo and other lenders to make ends meet.

75. The high cost of Solo's advances takes money that residents of this Commonwealth need to pay for basic necessities, including food, rent, utilities, and other expenses.

***Facts Relevant to Checchia***

76. Checchia has obtained various cash advances through the Solo app.

77. Each advance was used for personal, family, and/or household purposes.

78. In doing so, Checchia has paid Solo's "tips" and "donations."

79. Each time Checchia paid a "tip" and/or "donation," the charges he paid, in the aggregate, exceeded 6%.

80. For example, on October 21, 2022, Checchia obtained a $450.00 cash advance, and paid a $31.50 "donation" and $40.00 "tip."

81. The cash advance was to be repaid in two weeks, yielding a 414.25% APR.

82. Rather than disclose the true cost of this advance, Solo represented that the advance had a $0.00 Finance Charge and a 0% APR.

83. In fact, Solo never disclosed the cost of any of the cash advances Checcia obtained; instead, Solo represented that each cash advances had a 0% APR and $0.00 Finance Charge.

84. Checchia was unaware of the cost of Solo's cash advances.

85. Checchia has stopped using the Solo app.

86. Checchia seeks to obtain, on behalf of himself and each class member, $100 for each cash advance he obtained or three times the amount of "tips," fees, and other charges on each cash advance, whichever is higher, along with the other relief detailed below.

Case ID: 221202685

## CLASS ACTION ALLEGATIONS

87.     Plaintiff brings this action individually and on behalf of all others similarly situated under Rules 1702, 1708, and 1709 of the Pennsylvania Rules of Civil Procedure.

88.     Plaintiff seeks to certify the following class: "All Pennsylvania residents who obtained an advance or loan through the Solo app and paid a 'tip,' 'donation,' late fee, synapse fee, recovery fee, or any other interest, fee, charge, or cost."

89.     Plaintiff reserves the right to expand, narrow, or otherwise modify the class as the litigation continues and discovery proceeds.

90.     <u>Pa. R. Civ. P. 1702(1), 1708(a)(2):</u> The class is so numerous that joinder is impracticable. There are thousands of members of the class. Since each of the claims of the class members is substantially identical, and the class members request substantially similar relief, centralizing the class members' claims in a single proceeding is the most manageable litigation method available.

91.     <u>Pa. R. Civ. P. 1702(2), 1708(a)(1):</u> Plaintiff and the class members share numerous common questions of law and fact that will drive the resolution of the litigation and predominate over any individual issues. For example, there is a single common answer to whether Defendant can charge, collect, contract for, and receive interest and fees that aggregate in excess of the rates and amounts set forth in the LIPL or CDCA. This question, and other common questions of law and fact, predominate over any individual issues.

92.     <u>Pa. R. Civ. P. 1702(3):</u> Plaintiff's claims are typical of the claims of the class members because the claims of Plaintiff and the class are based on the same legal theories and arise from the same conduct.

Case ID: 221202685

93. <u>Pa. R. Civ. P. 1702(4), 1709:</u> Plaintiff is an adequate representative of the class because the interests of Plaintiff and the class members align. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the class and has no interest antagonistic to the class. Plaintiff retained counsel who are competent and experienced in the prosecution of class action litigation generally and consumer finance litigation specifically.

94. <u>Pa. R. Civ. P. 1708(a)(3), (6), (7):</u> Given the complexity and nature of the issues presented and the relief requested, the expense and time necessary to obtain such relief, and the anticipated recovery and relief Plaintiff and the class members may obtain, the class action mechanism is by far the preferred and most efficient litigation mechanism to adjudicate the claims of Plaintiff and the class members. Additionally, requiring Plaintiff and the class members to file individual actions would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. Class treatment presents far fewer management difficulties and provides benefits of a single adjudication and economies of scale.

95. <u>Pa. R. Civ. P. 1708(a)(4):</u> Based on the knowledge of Plaintiff and undersigned counsel, there are no cases currently pending that address the issues or request relief for the conduct at issue in this case.

96. <u>Pa. R. Civ. P. 1708(a)(5):</u> This forum is appropriate for this litigation because Defendant regularly conducts business in this county.

Case ID: 221202685

### COUNT I
**Violation of the Unfair Trade Practices and Consumer Protection Law
73 P.S. §§ 201-1, *et seq.***

97.     This claim is brought individually and on behalf of the class.

98.     Plaintiff, the class members, and Defendant are persons, the advances at issue were used to buy goods or services for personal, family, and/or household use, and Defendant's conduct is trade or commerce under the UTPCPL. 73 P.S. §§ 201-2(2)-(3), 201-9.2.

99.     The conduct at issue in this case constitutes unfair methods of competition or unfair or deceptive acts or practices under the UTPCPL because Defendant: caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services; caused a likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another; represented that goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they did not have; and engaged in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. *Id.* §§ 201-2(4)(ii), 201-2(4)(iii), 201-2(4)(v).

100.    More specifically, Defendant's conduct is unfair or deceptive because, among other things, Defendant's "tips," "donations," and fees are sham interest, Defendant's advances are offered at an excessive rate of interest and fees, Defendant's advances have high costs, despite Defendant's claim that it makes no-cost, no-fee advances, Defendant's advances have finance charges and high APRs, even though Defendant represents its advances have no finance charges and 0% APRs, Defendant's advances are not lawful, despite Defendant's implications to the contrary, and Defendant cannot charge, collect, contract for, or receive the "tips," "donations," and fees it charges, despite Defendant's implications to the contrary. *Pa. Dep't of Banking v. NCAS of Del., LLC*, 995 A.2d 422, 442-44 (Pa. Cmwlth. 2010) (finding claim for relief stated under the

Case ID: 221202685

UTPCPL where the complaint alleged that a payday lender "offer[ed] a line of credit product . . . at an excessive rate of interest").

101.    Defendant's use of unfair methods of competition or unfair or deceptive acts or practices in the conduct of trade or commerce violates 73 P.S. § 201-3.

102.    Plaintiff and the class members lost money or property as a result of Defendant's violations and therefore are entitled to actual damages, statutory damages, treble damages, and all other available relief under 73 P.S. § 201-9.2, as well as reasonable costs and attorneys' fees, and such additional relief the Court deems necessary or proper.

**COUNT II**
**Violation of the Loan Interest and Protection Law**
**41 P.S. §§ 101, *et seq.***

103.    This claim is brought individually and on behalf of the class.

104.    Plaintiff and the class members are persons who paid a rate of interest in excess of that provided for by the LIPL and CDCA, and who paid charges prohibited or in excess of those allowed by the LIPL and CDCA.

105.    Defendant collected from Plaintiff and the class members interest in excess of that provided for by the LIPL and CDCA, and charges prohibited or in excess of those allowed by the LIPL and CDCA.

106.    The LIPL provides for, among other things, damages, declaratory and injunctive relief, and attorneys' fees and costs. 41 P.S. §§ 501, 502, 503.

107.    Accordingly, the Court should issue an order: awarding any excess interest, fees, or other charges collected by Defendant; awarding triple the amount of any excess interest, fees, or other charges collected by Defendant; awarding attorneys' fees and costs; and awarding all other relief that is necessary and proper.

Case ID: 221202685

## COUNT III
## Violation of the Consumer Discount Company Act
## 7 P.S. §§ 6201, *et seq.*

108.     This claim is brought individually and on behalf of the class.

109.     Defendant is in the business of negotiating, making, or arranging loans or advances, is not a bank, and is not licensed under the CDCA or any other Pennsylvania statute.

110.     Consequently, Defendant could not charge, collect, contract for, or receive more than 6% combined interest, fees, or other charges on loans or advances issued in amounts under $25,000. 7 P.S. § 6203; 41 P.S. § 201(a).

111.     Defendant, however, charged, collected, contracted for, or received interest, fees, or other charges above this amount.

112.     Equitable relief is available to private parties under the CDCA. *Mellish v. CACH, LLC*, No. 19-cv-01217, 2020 U.S. Dist. LEXIS 52383, at *7 (W.D. Pa. Mar. 26, 2020) ("If a private civil litigant seeks enforcement of the CDCA, the available remedy is equitable[.]").

113.     Accordingly, the Court should issue an order: awarding restitution in the amount of any interest, fees, or other charges that Defendant charged, collected, contracted for, or received in excess of 6%; awarding attorneys' fees and costs; and awarding all other relief that is necessary and proper.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all claims so triable.

Case ID: 221202685

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.      An order certifying the proposed class, appointing Plaintiff as representative of the proposed class, and appointing undersigned counsel as counsel for the proposed class;

b.      An order awarding actual, statutory, treble, and all other damages available by law, along with pre- and post-judgment interest;

c.      An order providing Plaintiff and the class members restitution for any interest, fees, or other charges that Defendant charged, collected, contracted for, or received, and that aggregated in excess of 6%;

d.      An order awarding attorneys' fees and costs;

e.      An order declaring Defendant's conduct unlawful; and

f.      An order awarding all other relief that is just, equitable, and appropriate.

Respectfully Submitted,

Dated: December 30, 2022      By:    */s/ Kevin Abramowicz*
Kevin Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*

16

Case ID: 221202685

## **VERIFICATION**

I, Kevin Abramowicz, attorney for Plaintiffs, am fully familiar with the facts set forth in this Complaint and am authorized to make this Verification. I verify that the averments contained in this Complaint are true and correct to the best of my knowledge, information, and belief. Plaintiff's verification shall be substituted for this attorney verification upon request. I understand any false statements herein are made subject to the penalties of 18 Pa. C.S § 4904, relating to unsworn falsification to authorities.

Respectfully submitted,

Dated: December 30, 2022          By:    */s/ Kevin Abramowicz*
Kevin Abramowicz
PA ID No. 320659
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com

*Attorney for Plaintiff*

17

Case ID: 221202685

# EXHIBIT A

Case ID: 221202685

```
* * * * * * * * * * * * * * * * * * * * * * * *    TEMPORARY ORDER TO
                                           *       CEASE AND DESIST
IN THE MATTER OF:                          *
                                           *       ORDER TO MAKE RESTITUTION
SOLO FUNDS INC.                            *
NMLS # 1909701                             *       NOTICE OF INTENT TO ISSUE
                                           *       ORDER TO CEASE AND DESIST
    ("SoLo Funds" or "Respondent")         *
                                           *       NOTICE OF INTENT TO IMPOSE
                                           *       CIVIL PENALTY AND OTHER LEGAL
                                           *       AND EQUITABLE RELIEF
                                           *
                                           *                    AND
                                           *
* * * * * * * * * * * * * * * * * * * * * * * *    NOTICE OF RIGHT TO HEARING
```

## I.  PRELIMINARY STATEMENT

1.  The Banking Commissioner ("Commissioner") is charged with the administration of Part III of Chapter 668, Sections 36a-555 to 36a-573, inclusive, of the Connecticut General Statutes, "Small Loan Lending and Related Activities", and the regulations promulgated thereunder, Sections 36a-570-1 to 36a-570-17, inclusive, of the Regulations of Connecticut State Agencies ("Regulations"), and of Part XII of Chapter 669, Sections 36a-800 to 36a-814, inclusive, of the Connecticut General Statutes, "Consumer Collection Agencies", and the regulations promulgated thereunder, Sections 36a-809-6 to 36a-809-17, inclusive, of the Regulations.

2.  Pursuant to the authority granted by Section 36a-17 of the Connecticut General Statutes in effect at such time, the Commissioner, through the Consumer Credit Division of the Department of Banking ("Department"), has investigated the activities of Respondent to determine if it has violated, is violating or is about to violate the provisions of the Connecticut General Statutes and Regulations within the jurisdiction of the Commissioner ("Investigation").

Case ID: 221202685

3. As a result of the Investigation, the Commissioner has reason to believe that Respondent has violated subdivisions (2) and (3) of Section 36a-556(a) of the Connecticut General Statutes, Section 36a-561(4) of the Connecticut General Statutes, Section 36a-801(a) of the Connecticut General Statutes in effect at such time, and Section 1036 of Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5536(a)(1)(B).

4. As a result of the Investigation, the Commissioner finds that the public welfare requires immediate action to issue an order to cease and desist from violating subdivisions (2) and (3) of Section 36a-556(a) of the Connecticut General Statutes, Section 36a-561(4) of the Connecticut General Statutes and Section 36a-801(a) of the 2022 Supplement to the General Statutes, pursuant to Section 36a-52(b) of the 2022 Supplement to the General Statutes.

5. As a result of the Investigation, the Commissioner has reason to believe that a basis exists to issue an order to make restitution against Respondent pursuant to Sections 36a-570(b) and 36a-804(b) of the Connecticut General Statutes, and Section 36a-50(c) of the 2022 Supplement to the General Statutes.

6. As a result of the Investigation, the Commissioner has reason to believe that a basis exists to issue an order to cease and desist against Respondent pursuant to Sections 36a-570(b) and 36a-804(b) of the Connecticut General Statutes, and Section 36a-52(a) of the 2022 Supplement to the General Statutes.

7. As a result of the Investigation, the Commissioner has reason to believe that a basis exists to impose a civil penalty against Respondent pursuant to Sections 36a-570(b) and 36a-804(b) of the Connecticut General Statutes, and Section 36a-50(a) of the 2022 Supplement to the General Statutes.

8. As a result of the Investigation, the Commissioner has reason to believe that a basis exists to seek appropriate legal and equitable relief against Respondent pursuant to Section 1055 of the CFPA, 12 U.S.C. § 5565, including but not limited to civil money penalties and restitution.

## II.  MATTERS ASSERTED

9. Respondent is a Delaware corporation with an address of 555 W 5th Street Floor 35, Los Angeles, California.

Case ID: 221202685

10.  At all times relevant hereto, Respondent advertised via its website at www.solofunds.com and operated a mobile application (the "Platform") that assisted Connecticut consumers in receiving loans for personal, family or household use from individuals ("Lenders") in amounts ranging from $50 to $500. Respondent's website states: "SoLo connects lenders and borrowers.  Borrowers select the loan amount, payback date and the appreciation tip to lenders."

11.  Respondent solicits Lenders by touting on its website "Lend to reap the benefits", "Put your unused capital to work, earning for you while helping others" and Lenders' ability to "Earn Money", stating that "SoLo takes the work out of lending by vetting and organizing a marketplace of loan requests. Borrowers set their own terms and provide appreciation tips to lenders who agree to fund a loan, allowing for mutually beneficial financial outcomes."

12.  Loans on the Platform are initiated by a request from a consumer for a certain loan amount, and include a proposed monetary tip amount to the Lender ("Lender Tip") and a proposed monetary tip amount to Respondent ("SoLo Tip").  To facilitate the receipt of a loan by a consumer, Respondent encourages consumers to offer:  (i) a Lender Tip in an amount of up to 12% of the loan amount, and (ii) a SoLo Tip of up to 9% of the loan amount.

13.  Under "Lending" on its website, Respondent displays a sample loan request for $100 with a Lender Tip of $10 to be paid in 14 days.  The sample also indicates the Lender's ability to request a higher tip with the following prompt on the sample borrower's loan request, "Interested in a Larger Tip? Click Edit Tip to propose a new value.  The borrower will need to accept these amended terms before funding is finalized."

14.  Respondent has represented to the Department that "Borrowers may opt to include a Lender Tip or a SoLo Donation, but neither is required to submit the Loan request nor to receive a Loan." Nevertheless, 100% of the loans to Connecticut residents originated on the Platform from June 2018 to August 2021 either contained a Lender Tip or a SoLo Tip.  In addition, Respondent recommends that

Case ID: 221202685

consumers "Tip" to receive a loan, as seen in the following sample advertisements:

**Inactive New Borrowers!**
No funding?  Adjust your terms – Not getting funded?  Try raising your tip to the maximum percentage - this may sway a lender to take a chance on your loan until you've built a stronger SoLo Score.

**Active New Borrowers!**
No funding?  Adjust your terms – Not getting funded?  Try adjusting your tip or reason for loan -- this may sway a lender to take a chance on your loan until you've built a stronger SoLo Score.

**Did you know?**
Those who offer a tip on loan requests are 2X as likely to have their loan funded.

**Inactive Activate Non-Transactors**
Don't give-up! – Unfortunately, not every loan request can be filled by our lenders.  If your first loan request doesn't get funded, try submitting your loan again, and consider changing the tip amount or duration to make it more attractive to lenders.  Lenders prefer loans that are brief and have a high tip.

15.    Respondent controls many aspects of the loan transaction on the Platform, including the form of the promissory note and loan disclosure titled Truth in Lending Disclosures ("Loan Disclosure"), as well as prohibiting borrowers from taking out more than one loan at a time via the Platform.  In addition, in order to lend or borrow using the Platform, Respondent requires that Lenders and borrowers set up a special account for such purposes at Evolve Bank & Trust, NMLS # 509256.

16.    Respondent assigns proprietary SoLo scores to borrowers to assist Lenders in determining creditworthiness of borrowers.  If the proposed terms of a loan request are satisfactory to a Lender, the borrower executes a promissory note with the Lender via the Platform and the Lender funds the loan request through his or her account at Evolve Bank & Trust.

17.    Upon consummation of a loan, Lenders are required to pay the offered SoLo Tip on behalf of the borrower.  Such payment to Respondent is made by a Lender prior to the receipt of any monies from a borrower and is kept by Respondent regardless of whether the loan is ever paid back by the borrower.

18.    From at least June 2018 to the present, Respondent facilitated over 1600 loans to over 275 borrowers in Connecticut via the Platform.  The most common principal loan amount was $100, the average Lender Tip was $21 and the average SoLo Tip was $10.

Case ID: 221202685

19.  The Annual Percentage Rate ("APR") measures the cost of credit on an annual rate, or in other words the "finance charge".  12 CFR 1026.4 of Regulation Z provides, in pertinent part, that, "[t]he finance charge is the cost of consumer credit as a dollar amount.  It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."  SoLo Tips and Lender Tips were incident to or conditions of the extension of credit by Lenders and therefore represent a cost of the consumer credit extended to borrowers via the SoLo Platform.  Including such SoLo Tips and Lender Tips in the finance charge, APRs of loans made to Connecticut borrowers on the Platform from June 2018 to August 2021 ranged from approximately 43% to over 4280%.

20.  From approximately June 2018 to March 2021, Respondent provided Loan Disclosures and promissory notes to Connecticut borrowers that identified the amount of Lender Tip and SoLo Tip for each loan.  The Loan Disclosures identified such tips as amounts paid to others on the borrower's behalf and indicated that the loan amount, including any Lender Tip and Solo Tip, was the amount due on the loan.  Promissory notes during such time also stated that the borrower agreed to pay the Lender the total amount of the loan, including any Lender Tip and SoLo Tip, on the contracted due date.

21.  Beginning in April 2021, Respondent revised its standard Loan Disclosure and promissory note to remove itemization of any Lender Tip and SoLo Tip, and instead, provided Loan Disclosures and promissory notes to Connecticut borrowers that did not disclose any proposed Lender Tip or SoLo Tip. The only loan amount referenced on the Loan Disclosure and promissory note was the principal loan amount.  From April 2021 to the present, promissory notes to Connecticut borrowers failed to indicate any obligation of the borrower to pay tips on their loans and corresponding Loan Disclosures stated that only one payment, for the principal loan amount, was due at the end of the loan.  Nevertheless, on the loan's due date, the total loan amount, including tips, was withdrawn from the borrower's account at Evolve Bank and Trust.  Such promissory notes and Loan Disclosures misled borrowers as to the total

Case ID: 221202685

amount due on their loans and the amount that would be withdrawn from their bank account at the end of the loan.

22.  Furthermore, even though all loans originated via the Platform to Connecticut consumers contained an APR between approximately 43% and 4280%, Respondent provided Loan Disclosures to the Connecticut consumers stating that the loans had APRs of 0%, likely misleading Connecticut consumers as to the loan's APR, a material term of the loan.  Through such Loan Disclosures, Respondent provided wholly inaccurate information to Connecticut consumers and caused loan transactions to appear more advantageous than they truly were.

23.  Prior to June 25, 2021, loans generally had terms between 5 and 15 days.  On and after June 25, 2021, loans were required to be repaid in 35 days or less.  On the contracted due date, Evolve Bank & Trust initiates a debit from the borrower's account for the benefit of the Lender.  Respondent prohibits Lenders from communicating directly with borrowers and requires that Lenders collect on delinquent loans through Respondent or consumer collection agencies contracted by Respondent.  Approximately 15% of loans with Connecticut borrowers were assessed a late fee of 15% of the principal loan amount.  Such late fee was generally split equally between the Lender and Respondent.  Respondent also charged several other fees on delinquent loans, including an administrative fee, a synapse transaction fee and a recovery fee, for its collection efforts.

24.  If a borrower failed to pay back the loan within the required term, Respondent commenced collection on such account by sending reminders to the consumer that payment is owing on the account.  Respondent retains a recovery fee of approximately 20% of any payments made during the delinquency period, and has received over $4,000 in collection fees on Connecticut loans since June 2018.  After the delinquency period, the accounts are referred to consumer collection agencies that are permitted to retain 30% of all payments received from consumers on defaulted loans.  At least one consumer collection agency contracted by Respondent to collect upon defaulted loans of Connecticut consumers did not have a consumer collection agency license in Connecticut at any time relevant hereto.

Case ID: 221202685

25.  At no time relevant hereto was Respondent licensed as a small loan company in Connecticut, nor is Respondent exempt from such licensure requirements.

26.  At no time relevant hereto was Respondent licensed to act as a consumer collection agency in Connecticut, nor is Respondent exempt from such licensure requirements.

### III.  STATUTORY BASIS FOR ORDER TO CEASE AND DESIST, ORDER TO MAKE RESTITUTION, IMPOSITION OF CIVIL PENALTY AND OTHER LEGAL AND EQUITABLE RELIEF

#### Violation of Connecticut State Law

27.  Respondent's offering, soliciting, brokering, directly or indirectly arranging, placing or finding a small loan for a prospective Connecticut borrower, without the required license, as more fully described in paragraphs 9 through 25, inclusive, constitutes at least 1600 violations of Section 36a-556(a)(2) of the Connecticut General Statutes.  Such violations form the basis to issue an order to make restitution against Respondent pursuant to Section 36a-570(b) of the Connecticut General Statutes and Section 36a-50(c) of the 2022 Supplement to the General Statutes, issue an order to cease and desist against Respondent pursuant to Section 36a-570(b) of the Connecticut General Statutes and Section 36a-52(a) of the 2022 Supplement to the General Statutes, and impose a civil penalty upon Respondent pursuant to Section 36a-570(b) of the Connecticut General Statutes and Section 36a-50(a) of the 2022 Supplement to the General Statutes.  Section 36a-50(a) of the 2022 Supplement to the General Statutes authorizes the Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

28.  Respondent's engaging in activity intended to assist a prospective Connecticut borrower in obtaining a small loan, including, but not limited to, generating leads, without the required license, as more fully described in paragraphs 9 through 25, inclusive, constitutes at least 1600 violations of Section 36a-556(a)(3) of the Connecticut General Statutes.  Such violations form the basis to issue an order to make restitution against Respondent pursuant to Section 36a-570(b) of the Connecticut General Statutes and Section 36a-50(c) of the 2022 Supplement to the General Statutes, issue an order to cease and desist

Case ID: 221202685

against Respondent pursuant to Section 36a-570(b) of the Connecticut General Statutes and Section 36a-52(a) of the 2022 Supplement to the General Statutes, and impose a civil penalty upon Respondent pursuant to Section 36a-570(b) of the Connecticut General Statutes and Section 36a-50(a) of the 2022 Supplement to the General Statutes.  Section 36a-50(a) of the 2022 Supplement to the General Statutes authorizes the Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

29.  Respondent's acting as a consumer collection agency in this state without the required license, as more fully described in paragraphs 23, 24 and 26, constitutes a violation of Section 36a-801(a) of the Connecticut General Statutes in effect at such time.  Such violation forms the basis to issue an order to make restitution against Respondent pursuant to Section 36a-804(b) of the Connecticut General Statutes and Section 36a-50(c) of the 2022 Supplement to the General Statutes, issue an order to cease and desist against Respondent pursuant to Section 36a-804(b) of the Connecticut General Statutes and Section 36a-52(a) of the 2022 Supplement to the General Statutes, and impose a civil penalty upon Respondent pursuant to Section 36a-804(b) of the Connecticut General Statutes and Section 36a-50(a) of the 2022 Supplement to the General Statutes.  Section 36a-50(a) of the 2022 Supplement to the General Statutes authorizes the Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

30.  By providing false and misleading information to Connecticut borrowers concerning the terms and costs associated with loan transactions, Respondent engaged in a deceptive practice towards Connecticut consumers or misrepresented or omitted material information in connection with a small loan in this state, as more fully described in paragraphs 9 through 25, inclusive, in violation of Section 36a-561(4) of the Connecticut General Statutes.  Such violation forms the basis to issue an order to make restitution against Respondent pursuant to Section 36a-570(b) of the Connecticut General Statutes and Section 36a-50(c) of the 2022 Supplement to the General Statutes, issue an order to cease and desist against Respondent pursuant to Section 36a-570(b) of the Connecticut General Statutes and Section

Case ID: 221202685

36a-52(a) of the 2022 Supplement to the General Statutes, and impose a civil penalty upon Respondent pursuant to Section 36a-570(b) of the Connecticut General Statutes and Section 36a-50(a) of the 2022 Supplement to the General Statutes. Section 36a-50(a) of the 2022 Supplement to the General Statutes authorizes the Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

<u>**Violations of the Consumer Financial Protection Act of 2010–**</u>
<u>**Unfair, Deceptive and Abusive Practice**</u>

31. As part of its business, Respondent engages in offering or providing the brokering, servicing, and collection of extensions of credit to consumers, where the credit is offered or provided for use by consumers primarily for personal, family, or household purposes. Those activities are "consumer financial products or services" under the CFPA. 12 U.S.C. § 5481(5), (15)(A)(i), 15(A)(x). Respondent is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

32. Lenders engage in offering or providing extensions of credit to consumers, for use by consumers primarily for personal, family, or household purposes. That activity is a "consumer financial product or service" under the CFPA. 12 U.S.C. § 5481(5), (15)(A)(i). Lenders are therefore "covered persons" under the CFPA. 12 U.S.C. § 5481(6). Respondent provides one or more material services to Lenders in connection with the offering or provision by Lenders of the consumer financial product or service, including but not limited to participating in designing, operating, or maintaining the consumer financial product or service. Respondent is therefore a "service provider" under the CFPA. 12 U.S.C. § 5481(26).

33. Under the CFPA, it is unlawful for any covered person or service provider to engage in a deceptive act or practice in connection with any transaction with a consumer for a consumer-financial product or service or the offering of a consumer-financial product or service. Section 1036 of the CFPA, 12 U.S.C. §5536(a)(1)(B).

34. An act or practice is deceptive if it involves a material misrepresentation, omission, or practice that is likely to mislead a consumer acting reasonably under the circumstances.

Case ID: 221202685

35.  As more fully described in paragraphs 9 through 22, inclusive, Respondent provided false and misleading information to Connecticut borrowers who obtained loans via the Platform from June 2018 to the present by representing through such Loan Disclosures that loans had APRs of 0%, when such loans actually had APRs in excess of 43%, and at times, as high as 4280%, and from April 2021 to the present, that:  (1) no costs were associated with the loan transactions, when in fact, significant amounts of "tips" were paid by the borrowers to the Lenders and Respondent in connection with the loans and (2) erroneous payment schedules that understated the actual payment that would be withdrawn from a borrower's account on the loan due date by excluding "tips" from the payment amount.  Information concerning the APR and costs of a loan transaction is material information likely to impact a borrower's decision whether to proceed with the loan transaction.

36.  By providing false and misleading information to Connecticut borrowers concerning the terms and costs associated with loan transactions, Respondent engaged in a deceptive act or practice, in violation of Section 1036 of the CFPA, 12 U.S.C. § 5536(a)(1)(B).  Pursuant to Section 1042 of the CFPA, 12 U.S.C. § 5552(a), the Department is authorized to bring this enforcement action and seek appropriate legal and equitable relief provided in Section 1055 of the CFPA, 12 U.S.C. § 5565, including but not limited, restitution and civil money penalties.

### IV.  FINDING AND STATUTORY BASIS FOR
### TEMPORARY ORDER TO CEASE AND DESIST

The Commissioner finds that the public welfare requires immediate action to issue a temporary order requiring SoLo Funds to cease and desist from violating subdivisions (2) and (3) of Section 36a-556(a) of the Connecticut General Statutes, Section 36a-561(4) of the Connecticut General Statutes and Section 36a-801(a) of the 2022 Supplement to the General Statutes.  Respondent shall take such action as set forth herein to effectuate the purposes of Section 36a-52(b) of the 2022 Supplement to the General Statutes in that the interests of Connecticut residents are being materially prejudiced by Respondent not being duly licensed as a small loan company or consumer collection agency in

Case ID: 221202685

Connecticut and continuing to facilitate the origination and collection of loans in amounts of $500 or less with APRs of up to approximately 4280%.

### V.  TEMPORARY ORDER TO CEASE AND DESIST, ORDER TO MAKE RESTITUTION, NOTICE OF INTENT TO ISSUE ORDER TO CEASE AND DESIST, NOTICE OF INTENT TO IMPOSE CIVIL PENALTY AND OTHER LEGAL AND EQUITABLE RELIEF, AND NOTICE OF RIGHT TO HEARING

**WHEREAS,** the Commissioner has reason to believe that Respondent has engaged in acts or conduct which forms the basis to issue an order to cease and desist pursuant to Sections 36a-570(b) and 36a-804(b) of the Connecticut General Statutes and Section 36a-52(a) of the 2022 Supplement to the General Statutes, issue an order to make restitution against Respondent pursuant to Sections 36a-570(b) and 36a-804(b) of the Connecticut General Statutes and Section 36a-50(c) of the 2022 Supplement to the General Statutes, impose a civil penalty upon Respondent pursuant to Sections 36a-570(b) and 36a-804(b) of the Connecticut General Statute and Section 36a-50(a) of the 2022 Supplement to the General Statutes and impose other legal and equitable relief authorized pursuant to Section 1055 of the CFPA, 12 U.S.C. § 5565;

**AND WHEREAS,** the Commissioner has made the finding required under Section 36a-52(b) of the 2022 Supplement to the General Statutes.

**THE COMMISSIONER THEREFORE ORDERS,** pursuant to the authority granted in Section 36a-52(b) of the 2022 Supplement to the General Statutes, that SoLo Funds immediately **CEASE AND DESIST** from violating subdivisions (2) and (3) of Section 36a-556(a) of the Connecticut General Statutes, Section 36a-561(4) of the Connecticut General Statutes and Section 36a-801(a) of the 2022 Supplement to the General Statutes, including, but not limited to, enforcing such loans by any means. This Temporary Order to Cease and Desist shall become effective upon receipt by SoLo Funds Inc. and, unless set aside or modified by a court, shall remain in effect until the effective date of a permanent order or dismissal of the matters asserted in this Temporary Order to Cease and Desist.

Case ID: 221202685

**THE COMMISSIONER FURTHER ORDERS,** pursuant to authority set forth herein, that SoLo Funds **MAKE RESTITUTION** of any sums obtained as a result of SoLo Funds violating subdivisions (2) and (3) of Section 36a-556(a) of the Connecticut General Statutes, Section 36a-561(4) of the Connecticut General Statutes and Section 36a-801(a) of the Connecticut General Statutes in effect at such time, plus interest at the legal rate set forth in Section 37-1 of the Connecticut General Statutes. Specifically, the Commissioner **ORDERS** that:  Not later than thirty (30) days from the date this Order to Make Restitution becomes permanent, SoLo Funds shall:

1. Repay any amounts received by SoLo Funds from Connecticut residents in connection with a loan, plus interest.  Payments shall be made by cashier's check, certified check or money order; and

2. Provide to Carmine Costa, Director, Consumer Credit Division, Department of Banking, 260 Constitution Plaza, Hartford, Connecticut 06103-1800, or carmine.costa@ct.gov, evidence of such repayments.

**NOW THEREFORE,** notice is hereby given to Respondent that the Commissioner intends to issue an order requiring Respondent to **CEASE AND DESIST** from violating subdivisions (2) and (3) of Section 36a-556(a) of the Connecticut General Statutes, Section 36a-561(4) of the Connecticut General Statutes and Section 36a-801(a) of the 2022 Supplement to the General Statutes, including, but not limited to, enforcing such loans by any means, and impose a **CIVIL PENALTY** and **OTHER LEGAL AND EQUITABLE RELIEF** pursuant to Section 1055 of the CFPA, 12 U.S.C. § 5565, upon Respondent as set forth herein, subject to Respondent's right to a hearing on the allegations set forth above.

A hearing will be granted to Respondent if a written request for a hearing is received by the Department of Banking, Consumer Credit Division, 260 Constitution Plaza, Hartford, Connecticut 06103-1800 or submitted by e-mail to DOB.hearingsupport@ct.gov within fourteen (14) days following Respondent's receipt of this Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Other Legal and Equitable Relief, and Notice of Right to Hearing as set forth in Section 36a-52(a) of the 2022 Supplement

Case ID: 221202685

to the General Statutes and subsections (a) and (c) of Section 36a-50 of the 2022 Supplement to the General Statutes.  This Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Other Legal and Equitable Relief, and Notice of Right to Hearing shall be deemed received on the earlier of the date of actual receipt, or seven (7) days after mailing or sending.  To request a hearing, complete and return the enclosed Appearance and Request for Hearing Form to one of the above-referenced addresses.  If Respondent will not be represented by an attorney at the hearing, please complete the Appearance and Request for Hearing Form as "pro se".  Respondent may request that the hearing be held in person at the Department's offices or remotely via videoconference using Microsoft Teams.  Once a written request for a hearing is received, the Commissioner may issue a notification of hearing and designation of hearing officer that acknowledges receipt of a request for a hearing, designates a hearing officer and sets the date of the hearing in accordance with Section 4-177 of the Connecticut General Statutes and Section 36a-1-21 of the Regulations of Connecticut State Agencies.  If a hearing is requested, the hearing will be held on June 28, 2022, at 10 a.m.

If a hearing is requested, it will be held in accordance with the provisions of Chapter 54 of the Connecticut General Statutes, unless Respondent fails to appear at the requested hearing.  At such hearing, Respondent will have the right to appear and present evidence, rebuttal evidence and argument on all issues of fact and law to be considered by the Commissioner.  Any remote hearing will be held in accordance with Section 149 of June Special Session Public Act 21-2, and the Remote Hearing Guidelines available on the Department's website at https://portal.ct.gov/dob.

If Respondent does not request a hearing within the time prescribed or fails to appear at any such hearing, the allegations herein will be deemed admitted.  Accordingly, the Order to Make Restitution shall remain in effect and become permanent, and the Commissioner will issue an order that Respondent cease and desist from violating subdivisions (2) and (3) of Section 36a-556(a) of the Connecticut General Statutes and Section 36a-561(4) of the Connecticut General Statutes and Section 36a-801(a) of the 2022

Case ID: 221202685

Supplement to the General Statutes, including, but not limited to, enforcing such loans by any means, and may order that a civil penalty and other legal and equitable relief be imposed upon Respondent as set forth herein.

So ordered at Hartford, Connecticut
this <u>4th</u> day of <u>May</u> 2022.

     /s/ _____

Jorge L. Perez
Banking Commissioner

Case ID: 221202685

**CERTIFICATION**

I hereby certify that on this <u>4th</u> day of <u>May, 2022,</u> I caused to be mailed by certified mail, return receipt requested, the foregoing Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Other Legal and Equitable Relief, and Notice of Right to Hearing to SoLo Funds Inc., 555 W 5th Street Floor 35, Los Angeles, California  90013, Certified Mail No. 70191640000015877990.

 <u>/s/</u>\
Carmen M. Calderon\
Secretary 2

Case ID: 221202685



*Filed and Attested by the Office of Judicial Records 13 JAN 2023 04:55 pm B. MERCEDES*

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA**

STEVEN CHECCHIA, individually and as a representative of the Class,

      Plaintiff,

v.

SOLO FUNDS INC.,

      Defendant.

CIVIL ACTION

No. 221202685

**PROOF OF SERVICE**

Filed on behalf of Plaintiff:
Steven Checchia

Counsel of record for Plaintiff:

Kevin Abramowicz
Pa. ID No. 320659
**East End Trial Group LLC**
6901 Lynn Way
Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com

Case ID: 221202685

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

STEVEN CHECCHIA, individually and
as a representative of the Class,

        Plaintiff,

v.

SOLO FUNDS INC.,

        Defendant.

CIVIL ACTION

No. 221202685

## **PROOF OF SERVICE**

I, Kevin Abramowicz, file the within Affidavit of Service (attached as Ex. A), showing the

Complaint and Civil Cover Sheet in this action were served on Robyn Banks, Intake Specialist

with The Corporation Trust Company for Defendant, on January 4, 2023, at 12:25 pm, at 1209

Orange Street, Wilmington, DE 19801. I verify that the statements of this proof of service are true

and correct to the best of my knowledge.

Respectfully Submitted,

Dated: January 13, 2023

By: *Kevin Abramowicz*

Kevin Abramowicz
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
Kabramowicz@eastendtrialgroup.com

*Attorney for Plaintiff*

Case ID: 221202685

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA**

STEVEN CHECCHIA, individually and
as a representative of the Class,

      Plaintiff,

v.

SOLO FUNDS INC.,

      Defendant.

CIVIL DIVISION

No. 221202685

## **CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of Proof of Service was served by U.S. Mail, first class, postage prepaid on January 13, 2023 upon:

Solo Funds, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE  19801

Dated: January 13, 2023      By: _Kevin Abramowicz_

                          Kevin Abramowicz

                          *Attorney for Plaintiff*

# EXHIBIT A

Case ID: 221202685

# AFFIDAVIT OF SERVICE

| Case:<br>2212057981 | Court:<br>Court of Common Pleas of Philadelphia County Trial Division | County:<br>Philadelphia | Job:<br>8166546 (Solo Funds, Inc. c/o The Corporation Trust Company) |
|---|---|---|---|
| Plaintiff / Petitioner:<br>STEVEN CHECCHIA | | Defendant / Respondent:<br>SOLO FUNDS INC. | |
| Received by:<br>Legal Serve Now | | For:<br>East End Trial Group, LLC | |
| To be served upon:<br>Solo Funds, Inc. c/o The Corporation Trust Company | | | |

I, Tom Newton, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Robyn Banks, 1209 ORANGE ST, WILMINGTON, DE 19801-1120

**Manner of Service:**   Registered Agent, Jan 4, 2023, 12:25 pm EST

**Documents:**   Civil Cover Sheet, Complaint

**Additional Comments:**
1) Successful Attempt: Jan 4, 2023, 12:25 pm EST at 1209 ORANGE ST, WILMINGTON, DE 19801-1120 received by Robyn Banks. Age: 50; Ethnicity: African American; Gender: Female; Weight: 180; Height: 5'6"; Hair: Black; Eyes: Brown; Relationship: Intake Specialist ;

_____   01/09/2022
Tom Newton, Process Server      **Date**

The Wesley Group
107 S West St #417
Alexandria, VA 22314

Subscribed and sworn to before me by the affiant who is personally known to me.

MBernardo
**Notary Public**

1/9/2023      11/30/2023
**Date**      **Commission Expires**

MONIQUE BERNARDO
NOTARY PUBLIC
REG. #7849726
MY COMMISSION EXPIRES
11/30/2023
COMMONWEALTH OF VIRGINIA