# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEVEN CHECCHIA, individually and as a representative of the Class,, <br><br> Plaintiff, <br><br> v. <br><br> SOLO FUNDS, INC., <br><br> Defendant. | Case No.: 2:23-cv-00444 |

## O R D E R

    **AND NOW**, this _____ day of _____, 2023, upon consideration of the Motion of Defendant SoLo Funds, Inc. ("SoLo") to Compel Arbitration, and any opposition thereto, it is **ORDERED** as follows:

    1.  Defendant's Motion to Compel Arbitration is **GRANTED**.

    2.  Since the parties are to engage in private arbitration, the Clerk of the Court is directed to **CLOSE** this case.

**IT IS ORDERED**.

                                       **BY THE COURT:**

                                    _____

                                    **Honorable Karen Spencer Marston
United States District Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEVEN CHECCHIA, individually and as a representative of the Class,, | |
| Plaintiff, | Case No.: 2:23-cv-00444 |
| v. | |
| SOLO FUNDS, INC., | |
| Defendant. | |

## MOTION OF DEFENDANT, SOLO FUNDS, INC., TO COMPEL ARBITRATION AND TO DISMISS PROCEEDINGS

Defendant, SoLo Funds, Inc. ("SoLo"), by its attorneys, hereby moves to compel arbitration and to dismiss the claims against it, or in the alternative, to stay all proceedings against SoLo in this action until arbitration is completed. The Court should grant this motion because Plaintiff, Steven Checchia, consented to specific terms and conditions in connection with his use of SoLo's platform which included a conspicuous, valid, and enforceable arbitration provision that requires him to individually arbitrate any and all claims related to SoLo, the services it provides, and any alleged statutory violations, including those claims alleged in the Class Action Complaint. Therefore, Checchia agreed to individually arbitrate his claims against SoLo.

In support of this Motion, SoLo relies on the attached Memorandum of Law with accompanying exhibits. A proposed form of Order is attached.

Dated: March 8, 2023

Respectfully submitted,

/s/ Andrew K. Stutzman
Andrew K. Stutzman
Christopher A. Reese
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103-7098
T: (856) 321-2408 | F: (856) 321-2415
E: astutzman@stradley.com; creese@stradley.com
*Attorneys for Defendant, SoLo Funds, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN CHECCHIA, individually and as a representative of the Class,, <br><br>      Plaintiff, <br><br>    v. <br><br> SOLO FUNDS, INC., <br><br>      Defendant. | Case No.: 2:23-cv-00444 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOLO FUNDS, INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS PROCEEDINGS

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. BACKGROUND AND ARBITRATION PROVISION ..............................................2

    A. SOLO .................................................................................................................2

    B. CHECCHIA'S USE OF SOLO'S PLATFORM..................................................2

        1. Checchia's Creation of a SoLo Account.................................................2

        2. Checchia's Loans ....................................................................................3

    C. TERMS AND CONDITIONS AND ARBITRATION PROVISION ..............4

    D. THE PRESENT CLASS ACTION LITIGATION ...........................................5

III. LEGAL ARGUMENT ................................................................................................6

    A. STANDARD OF REVIEW ................................................................................6

    B. THE ARBITRATION PROVISION IS VALID AND ENFORCEABLE. .......6

        1. The Federal Arbitration Act governs the Terms and Conditions...........8

        2. The Arbitration Provision is Enforceable under Pennsylvania Law....11

        3. The Arbitration Agreement is Equally Enforceable Under California Law. ....................................................................................................14

    C. THE CLAIM IN THE COMPLAINT FALLS WITHIN THE PARTIES' AGREEMENT TO ARBITRATE. ...................................................................17

        1. The Arbitrator Determines Arbitrability.............................................17

        2. The Arbitration Clause is Broad and Encompasses the Claim in this Case. ....................................................................................................19

    D. SOLO DID NOT WAIVE ITS RIGHT TO ARBITRATE. ...........................20

    E. ARBITRATION SHOULD BE COMPELLED ON AN INDIVIDUAL BASIS. ............................................................................................................21

    F. THIS COURT SHOULD DISMISS THE CLAIMS AGAINST SOLO IN LIGHT OF THE AGREEMENT TO ARBITRATE. ..................................................21

IV. CONCLUSION.........................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Allied Bruce Terminix Companies v. Dobson*, 513 U.S. 265 (1995) ........................................... 9

*Aluminium Bahrain B.S.C. v. Dahdaleh*, 17 F. Supp. 3d 461 (W.D. Pa. 2014).......................... 20

*Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013)........................................... 6

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........................................... 6

*AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643 (1986)........................................... 11

*Brennan v. CIGNA Corp.*, 282 Fed. App. 132 (3d Cir. 2008) ........................................... 7

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ........................................... 7, 8

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ........................................... 6

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003)........................................... 9

*Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170 (E.D. Pa. 2010)........................................... 19, 21

*Clymer v. Jetro Cash and Carry Enterprises, Inc.*, 334 F. Supp. 3d 683 (E.D. Pa. 2018) ........................................... 14

*Comrey v. Discover Fin. Servs., Inc.*, 806 F. Supp. 2d 778 (M.D. Pa. 2011) ........................................... 20, 21

*Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021) ........................................... 13

*Credit Acceptance Co. v. Davisson*, 644 F. Supp.2d 948 (N.D. OH. 2009) ........................................... 10, 19

*Deardorff v. Cellular Sales of Knoxville, Inc.* 2022 WL 407396, *7 (E.D. Pa. 2022) ........................................... 18

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996)........................................... 7, 8

*Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699 (E.D. Pa. 2015)........................................... 9

*Epic Sys. Corp. v. Lewis,* 200 L.Ed.2d 889, 138 S.Ct. 1612 (2018) ........................................... 10

*Feldman v. Google, Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007) ........................................... 12, 17

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ........................................... 6

*Gambo v. Lyft*, -- F.Supp.3d. ---, 2022 WL 16961132 (D.C. Nov. 16, 2022)........................................... 14, 15, 16, 17

*GGIS Ins. Servs., Inc. v. Lincoln Gen. Ins. Co.*, 773 F. Supp. 2d 490 (M.D. Pa. 2011) ........................................... 21

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)........................................... 6

*Gov't of the Virgin Islands v. United Indus. Workers, N.A.*, 169 F.3d 172 (3d Cir. 1999)........................................... 10

*Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000).................................................. 6, 7, 22

*Harris v. Green Tree Financial Corp.*, 183 F.3d 173 (3d Cir. 1999) ........................................ 8

*HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308 (W.D. Pa. 2020) ............................ 12, 13, 18

*Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524 (2019)................................... 18

*HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100 (2013) .............................................. 14

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002)............................................. 11

*In re Est. of Atkinson*, 231 A.3d 891 (Pa. Super. 2020)............................................. 13

*In re Facebook Biometric Information Privacy Litig,*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 16, 17

*In re Pharm. Benefit Managers Antitrust Litigation ("PBM")*, 700 F.3d 109 (3d Cir. 2012)................... 20

*Liptak v. Accelerated Inventory Mgmt., LLC*, No, 2:20-CV-967, 2021 WL 650514 (W.D. Pa. 2021) 12, 13

*Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016) ...................................... 14

*Marmet Health Care Center, Inc. v. Clayton Brown*, 565 U.S. 530 (2012) ............................... 10

*Masoner v. Educ. Mgmt. Corp.*, 18 F. Supp. 3d 652 (W.D. Pa. 2014) .................................... 11

*McLean v. Big Lots Inc.*, 542 F. Supp. 3d 343 (W.D. Pa. 2021)......................................... 20

*Medtronic Ave Inc. v. Cordis Corp.*, 100 Fed. Appx. 865 (3rd Cir. 2004) ............................... 19

*Meyer v. Uber Tech.*, 868 F.3d 66 (2d Cir. 2017)................................................... 12

*Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324 (E.D. Pa. 2004)............................... 10, 11, 19

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ...................... 10

*Morales v. Sun Constructors, Inc.*, 541 F.3d 218 (3d Cir. 2008)....................................... 7

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)......................... 6, 8

*Moule v. United Parcel Serv. Co.*, No. 1:16-CV-00102, 2016 WL 3648961 (E.D. Cal. July 7, 2016) ...... 16

*Mumma v. Pennsy Supply, Inc.*, 448 Fed. Appx. 295 (3d Cir. 2011)....................................... 22

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014)....................................... 14

*PaineWebber, Inc. v. Hartmann*, 921 F.2d 507 (3d. Cir. 1990)....................................... 11

*Perry v. Thomas*, 482 U.S. 483 (1987) ........................................................... 8

*Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 108 (W.D. Pa. 2019) ................................. 17

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)....................................... 8

*Putt v. Tripadvisor, Inc.*, 2021 WL 242470  (E.D. Pa. 2021) ................................................... 12

*Rent-A-Center., W., Inc. v. Jackson*, 561 U.S. 63 (2010) ......................................................... 17

*Richards v. American Academic Health System LLC*, 2020 WL 2615688 (E.D. Pa. 2020) ...................... 19

*Selden v. Airbnb, Inc.*, 2016 WL 6476934 (D.C. 2016) ....................................................... 15, 16, 17

*Shaffer v. Graybill*, 68 Fed. Appx. 374 (3d Cir. 2003) ............................................................ 22

*Sheet Metal Workers Int'l. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 673 F.Supp.2d 313 (D.N.J. 2009).............................................................................................. 7

*Simeone v. Simeone*, 581 A.2d 162 (Pa. 1990) ........................................................................ 7

*Southland Corp. v. Keating*, 465 U.S. 1 (1984) ...................................................................... 8

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2nd Cir. 2002) .......................................... 14

*Staples v. Money Tree, Inc.*, 936 F. Supp. 856 (M.D. Ala. 1996) ........................................... 10

*Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534 (E.D. Pa. 2018) ............................. 11, 12

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ................... 14, 16, 17

*Talbott v. Credit Acceptance Corp.*, No. 5:21-cv-05133, 2022 WL 4793126 (E.D. Pa. Oct. 3, 2022) ........ 7

*Teel v. Beldon Roofing & Remodeling Co.*, 281 S.W.3d 446 (Tex. App. 2007)......................... 10

*Thomas O'Connor & Co. v. Ins. Co. of N. Am.*, 697 F. Supp. 563 (D. Mass. 1988) ................. 10

*Torres v. CleanNet, U.S.A., Inc.*, 90 F. Supp. 3d 369 (E.D. Pa. 2015) ................................... 21

*Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468 (1989) .......................................... 10

*Zabokritsky v. JetSmarter, Inc.*, 2019 WL 2563738 (E.D. Pa. 2019) ...................................... 12

## **STATUTES**

41 P.S. §§ 101 ................................................................................................... 1, 5, 19, 20

7 P.S. §§ 6201 .................................................................................................. 1, 5, 19, 20

73 P.S. §§ 201-1 ............................................................................................... 1, 5, 19, 20

9 U.S.C. § 1 ............................................................................................... 1, 6, 9, 11, 12

9 U.S.C. § 2 ...................................................................................................... 6, 7, 8, 9

9 U.S.C. § 3 ........................................................................................................... 9, 22

9 U.S.C. § 4 ................................................................................................................................... 8

## OTHER AUTHORITIES

AAA Rule 7 ..................................................................................................................................... 18

Defendant, SoLo Funds, Inc. ("SoLo"), submits this Memorandum of Law in support of its motion to compel arbitration and to dismiss the claims against it, or in the alternative, to stay all proceedings against SoLo in this action until arbitration is completed.

## I.     **INTRODUCTION**

The Court should compel arbitration of the claims against SoLo consistent with the agreement of the parties and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). Plaintiff, Steven Checchia ("Checchia"), consented to specific terms and conditions (the "Terms and Conditions") in connection with his use of SoLo's platform which included a conspicuous, valid, and enforceable arbitration provision (the "Arbitration Provision") that requires him to individually arbitrate any and all claims related to SoLo, the services it provides, and any alleged statutory violations, including those claims alleged in the Class Action Complaint. Checchia never rejected the Arbitration Provision, and it is binding on the parties.

Checchia has now filed suit against SoLo alleging that SoLo charged Checchia and the putative class members unlawful fees and interest in violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"); the Loan Interest and Protection Law, 41 P.S. §§ 101, *et seq.* ("LIPL"), and the Consumer Discount Company Act, 7 P.S. §§ 6201, *et seq.* ("CDCA"). (Compl., Dkt. No 1-2 at ¶ 1.) Putting aside the lack of merit to Checchia's claims,[1] they are subject to binding arbitration pursuant to the Terms and Conditions and Section 4 of the FAA.[2] The Court should therefore dismiss this action and compel Checchia to re-file his claims against SoLo in binding, private individual arbitration.

---

[1] SoLo reserves the right to contest the truth of Checchia's allegations, as well as assert its own defenses of every nature.

[2] 9 U.S.C. §§ 1–16. As explained below, the FAA governs the enforcement of the Arbitration Clause in SoLo's Terms and Conditions.

## II.   BACKGROUND AND ARBITRATION PROVISION

### A.   SOLO

SoLo, a Delaware Corporation with its principal place of business in Los Angeles, California, is one of the leading financial technology companies for underserved communities. SoLo was created in 2018 to create a viable, non-predatory alternative to traditional lending through which borrowers are connected with lenders. SoLo provides an online peer-to-peer platform that connects consumers in need of short-term, small-dollar loans ("Borrowers") with individuals who wish to provide those loans ("Lenders").[3]

### B.   CHECCHIA'S USE OF SOLO'S PLATFORM

#### 1.   Checchia's Creation of a SoLo Account

At all times relevant to this litigation, no user of SoLo's platform could lend or borrow money through the SoLo platform without first creating a SoLo profile, which required acceptance of the then-current version of SoLo's Terms and Conditions, among other agreements.[4] Checchia signed up for his account through SoLo's Mobile Application on February 26, 2022.[5]

When Checchia created his account on February 26, 2022, he navigated through a series of screens through which he provided various pieces of information, including a telephone number and one-time passcode.[6] On the final page of this process (the "Final Page"), Checchia had to provide various pieces of personal information, including his name, date of birth, e-mail address, physical address, and social security number.[7] On the Final Page, a hyperlink to the Terms and Conditions was presented in bold font and, if clicked on, a webview in the Mobile Application is

---

[3] *See* Declaration of Albert Wildeman ("Wildeman Dec."), ¶ 5.
[4] *See* Declaration of Eddy Muñoz ("Muñoz Dec."), ¶ 8.
[5] *Id.* at ¶ 7;  Wildeman Dec. at ¶ 6.
[6] Muñoz Dec. at ¶¶ 7, 9.
[7] *Id*. at ¶ 10, Ex. A at p. 1.

opened that enables the user to view the then-current version of the Terms and Conditions.[8] Below this link to the Terms and Conditions, Checchia was given the option to check a box that states "I agree to SoLo's Terms & Conditions" before proceeding with creating a profile.[9] Until Checchia checked the box, he could not proceed with the application process, create a SoLo account, or borrow or lend through SoLo's Platform.[10] After checking the box next to the affirmation "I agree to SoLo's Terms & Conditions," Checchia then clicked on a box directly below to proceed with the application.[11]

By creating his SoLo account on February 26, 2022, Checchia agreed to SoLo's Terms and Conditions, which contains a mandatory alternative dispute resolution provision and a class action waiver.[12]

### 2. Checchia's Loans

After creating his SoLo profile and accepting SoLo's Terms and Conditions, Checchia routinely used SoLo's platform, receiving funding for nineteen (19) separate individual borrower requests over a ten month period[13] resulting in $6,175.00 in loans (collectively, the "Loans"). Checchia has failed to repay the most recent Loan which Checchia requested the same day he filed the Class Action Complaint.[14]

In connection with each of the nineteen Loans, Checchia agreed to remain in compliance with SoLo's Terms and Conditions. *See, e.g.,* Wildeman Dec. at ¶¶ 7-8, Ex. A at p. 2 ("Borrower may be deemed in default [] of Borrower's obligations under this Note if Borrower . . . fails to

---

[8] *Id.* at ¶ 10.

[9] *Id.* at ¶¶ 10-11, Ex. A at p. 2.

[10] *Id.* at ¶ 10.

[11] *Id.* at ¶¶ 10-11, Ex. A at p. 2.

[12] *Id* at ¶ 12, Ex. B at pp. 1, 5-6.

[13] Checchia's first borrower request was funded on February 28, 2022, just two days after his SoLo account was created and he consented to the Terms and Conditions. Wildeman Dec. at ¶¶ 6-7.

[14] *Id.* at ¶ 7(s); (Compl., Dkt. 1-2).

abide by the terms of this Note or the SoLo Terms and Conditions."). The Loans were funded by various non-party Lenders through the SoLo platform.[15] At no time during Checchia's use of SoLo's platform did Checchia ever revoke his consent to the Terms and Conditions, the Arbitration Provision, or otherwise indicate he did not agree to be bound by the terms of the Terms and Conditions and Arbitration Provision.[16]

## C.   TERMS AND CONDITIONS AND ARBITRATION PROVISION

The Terms and Conditions agreed to by Checchia include a mandatory Arbitration Provision.[17] In relevant part, the Terms and Conditions contain the following conspicuous notice in bold, capitalized font, advising Checchia of the Arbitration Provision:

> **THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION THAT AUTHORIZES EITHER PARTY TO ELECT MANDATORY AND BINDING ARBITRATION OF CERTAIN DISPUTES WHERE PERMITTED BY LAW. THE TERMS OF THE ARBITRATION PROVISION ARE SET FORTH IN THE SECTION ENTITLED "RESOLUTION OF DISPUTES BY ARBITRATION." PLEASE READ THIS ARBITRATION PROVISION CAREFULLY**.[18]

The Arbitration Provision within the Terms and Conditions provides more information about Checchia's commitment to arbitrate any possible claims, including Checchia's agreement to waive any rights he may have to assent to or participate in a class action:

> IF YOU RESIDE IN THE UNITED STATES...YOU AGREE THAT ANY DISPUTE, CLAIM, OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT...INCLUDING STATUTORY CONSUMER CLAIMS,

---

[15] *Id.* at ¶ 7.

[16] *Id.* at ¶ 9.

[17] *Id.* at ¶ 8, Ex. A; Muñoz Dec. at ¶¶ 12-13, Ex. B at pp. 1, 5-6, Ex. C at pp. 1, 5-6, and Ex. D at p. 2, 11-12. All three versions of the Terms and Conditions are identical with respect to the Arbitration Provision, with the sole difference being immaterial. Specifically, each version expressly provides that any arbitration will be governed by "the commercial arbitration rules and the supplementary procedures for consumer related disputes [] then in effect," and then a telephone number and citation to the AAA website are provided to access the rules. The sole difference is that the version in place through March 16, 2022 cites a specific page on the AAA website (www.adr.org/arb_med), the other two versions cite the main page of the AAA website (www.adr.org). The fact that the AAA Rules in effect at the time of arbitration has always remained the same, the immaterial change is merely as to the specificity in the citation to those rules. Compare Ex. B at p. 6, C at p. 6, and D at pp. 11-12.

[18] *Id.* at Ex. B at p. 1, Ex. C at p. 1, and D at p. 2.

OR TO THE USE OF THE SERVICE...WILL BE SETTLED BY BINDING ARBITRATION...YOU ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PROCEEDING...THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF ANY CLASS OR REPRESENTATIVE PROCEEDING... NOTE THAT THIS AGREEMENT TO ARBITRATE CONSTITUTES A TRANSACTION IN INTERSTATE COMMERCE RENDERING THE INTERPRETATION AND ENFORCEMENT OF THIS PROVISION SUBJECT TO THE FEDERAL ARBITRATION ACT. THIS ARBITRATION WILL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") UNDER THE COMMERCIAL ARBITRATION RULES AND THE SUPPLEMENTARY PROCEDURES FOR CONSUMER RELATED DISPUTES (THE "AAA RULES") THEN IN EFFECT...THE AAA RULES ARE AVAILABLE AT www.adr.org OR BY CALLING THE AAA AT 1-800-778-7879.[19]

The Arbitration Provision also provides that "[t]his section will survive any termination of this agreement."[20]

## D.    THE PRESENT CLASS ACTION LITIGATION

Rather than demanding arbitration, Checchia filed this lawsuit, asserting claims against SoLo related to the Loans. Specifically, on his own behalf and on behalf of a putative statewide class, Checchia alleges that SoLo violated the UTPCPL, the LIPL, and the CDCA by collecting tips and donations in connection with the Loans that amounted to a charge of unlawful fees and interest. (Compl., Dkt. 1-2 at ¶¶ 1, 98, 104, 110.)

Despite the lack of merit in Checchia's claims, the Court should now compel Checchia to pursue these claims against SoLo in private, binding individual arbitration.

---

[19] *See supra* at n. 17.
[20] Muñoz Dec*., Ex. B at p. 6, Ex. C at p. 6, and Ex. D at p. 12. The Terms and Conditions also contain a choice-of-law provision that states, "[t]is Agreement is governed by California law." *Id*., Ex. B at p. 5; Ex. C at p. 5; Ex. D at p. 10. SoLo's Motion should be granted equally under Pennsylvania and California law.

### III.    LEGAL ARGUMENT

**A.    STANDARD OF REVIEW**

The law favors arbitration of disputes and requires that courts rigorously enforce arbitration agreements. *See Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Courts enforce arbitration agreements and apply the FAA, 9 U.S.C. § 1, *et seq.* regardless of whether arbitrability is raised in federal or state court. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Id*. Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

**B.    THE ARBITRATION PROVISION IS VALID AND ENFORCEABLE.**

The Terms and Conditions is a binding agreement that requires arbitration of claims arising out of or related to the Terms and Conditions or use of SoLo's services. The Terms and Conditions contains a conspicuous notice which advised Checchia of the Arbitration Provision and that either

Checchia or SoLo could elect mandatory and binding arbitration of certain disputes.[21] The Terms and Conditions identifies the parties bound by the agreement and the types of disputes subject to arbitration.[22] The Arbitration Provision explicitly states that "ANY DISPUTE, CLAIM, OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY ALLEGED BREACH, TERMINATION, ENFORCEMENT, OR INTERPRETATION THEREOF, INCLUDING STATUTORY CONSUMER CLAIMS, OR TO THE USE OF THE SERVICE [] WILL BE SETTLED BY BINDING ARBITRATION."[23] Checchia expressly agreed to the Terms and Conditions, including the Arbitration Provision, confirming he read and understood its contents.[24] Checchia did not reject the Arbitration Provision, opt out, or discontinue use of SoLo's platform.[25] Instead, Checchia secured nineteen loans through SoLo's platform, and each of the nineteen times Checchia agreed to remain in compliance with the Terms and Conditions.[26] Therefore, Checchia has no basis to challenge the Arbitration Provision.[27]

Moreover, Checchia bears a heavy burden to challenge the Arbitration Clause. *See Randolph*, 531 U.S. at 92. This is a burden he cannot satisfy. Courts may only invalidate arbitration agreements based upon generally applicable contract defenses. *See* 9 U.S.C. § 2; *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Challenges must be directed specifically and solely

---

[21] *Id.*, Ex. B at p. 1, Ex. C at p. 1, and Ex. D at p. 2.

[22] *Id.*, Ex. B at pp. 1, 5-6, Ex. C at pp. 1, 5-6, Ex. D at pp. 2, 11-12.

[23] *Id.* at Ex. B at pp. 5-6, Ex. C at p. 5, Ex. D at p. 11.

[24] *Id.* at ¶ 12, Ex. A at p. 2.

[25] Wildeman Dec. at ¶ 9.

[26] Wildeman Dec. at ¶¶ 7-8, Ex. A at pp. 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38.

[27] "Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990); *Brennan v. CIGNA Corp.*, 282 Fed. App. 132, 136 n.3 (3d Cir. 2008) (same); *Talbott v. Credit Acceptance Corp.*, No. 5:21-cv-05133, 2022 WL 4793126, at *5 (E.D. Pa. Oct. 3, 2022) (same). "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008); *see also Sheet Metal Workers Int'l. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 673 F.Supp.2d 313, 328 (D.N.J. 2009) ("[w]alking blindfolded through one's business affairs does not excuse the ensuing collision").

to arbitration clauses and cannot relate to the contract as a whole. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447-48 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Courts also will enforce an arbitration agreement even though the arbitrator may later determine that the contract is invalid. *Prima Paint*, 388 U.S. at 404; *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 179 (3d Cir. 1999).

Even when using doctrines of general applicability in examining an arbitration agreement, such as unconscionability, courts are not permitted to employ those doctrines in a way that subjects arbitration agreements to special scrutiny. *See*, *e.g.*, *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). State laws that undermine enforcement of private arbitration agreements or that single out arbitration for special treatment are preempted by the FAA. *AT&T Mobility*, 563 U.S. at 343; *Doctor's Assocs.*, 517 U.S. at 688; *Southland Corp. v. Keating*, 465 U.S. 1, 18 (1984). Here,

Because the Arbitration Provision is valid and enforceable, the Court should grant SoLo's motion and compel arbitration of this dispute.

### 1. The Federal Arbitration Act governs the Terms and Conditions.

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration." *Moses H. Cone*, 460 U.S. at 24. Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . **shall** be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). Where a party seeks to enforce an arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. If the court compels

arbitration, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

The Terms and Conditions fall within the scope of the FAA. The FAA applies to any written arbitration provision in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA defines "commerce" as "commerce among the several States." 9 U.S.C. § 1. In Section 2, "the word 'involving' . . . signals an intent to exercise Congress's commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction . . . turn[s] out, in fact, to have involved interstate commerce." *Allied Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 273 (1995). The reach of the FAA is broad, with the statute providing "for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699, 711 (E.D. Pa. 2015) (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)). Therefore, "the FAA encompasses a wider range of transactions than those actually 'in commerce,'" and it "may be applied to 'individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control.'" *Id.*

The Terms and Conditions in this case are clearly in writing.[28] Additionally, the subject transactions "involve interstate commerce" within the meaning of the FAA for several reasons. First, as Checchia acknowledges in his Complaint, Checchia is a citizen of the State of Pennsylvania, and SoLo's principal place of business is located in Los Angeles, California.[29]

Second, the Arbitration Provision itself provides that it is governed by the FAA: "NOTE THAT THIS AGREEMENT TO ARBITRATE CONSTITUTES A TRANSACTION IN INTERSTATE COMMERCE RENDERING THE INTERPRETATION AND ENFORCEMENT

---

[28] See Muñoz Dec. ¶¶ 12-13, Ex. B, Ex. C, and Ex. D.
[29] (Compl., Dkt. 1-2 at ¶¶ 5-6.)

9

OF THIS PROVISION SUBJECT TO THE FEDERAL ARBITRATION ACT."[30] Courts consider this language evidence of the satisfaction of the interstate commerce requirement. *See*, *e.g.*, *Credit Acceptance Co. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. OH. 2009) (finding that the FAA applied because "the Contract itself provides that [t]he Federal Arbitration Act governs"); *Staples v. Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996); *Thomas O'Connor & Co. v. Ins. Co. of N. Am.*, 697 F. Supp. 563, 566 (D. Mass. 1988); *Teel v. Beldon Roofing & Remodeling Co.*, 281 S.W.3d 446, 449 (Tex. App. 2007); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989) (noting that courts must "rigorously enforce [arbitration] agreements according to their terms"). For all these reasons, the transaction here was one "involving commerce" under the FAA. *See Gov't of the Virgin Islands v. United Indus. Workers, N.A.*, 169 F.3d 172, 176 (3d Cir. 1999) ("the FAA's reach coincides with that of the Commerce Clause"). The parties' agreement that the FAA controls is binding. *See Epic Sys. Corp. v. Lewis,* 200 L.Ed.2d 889, 138 S.Ct. 1612, 1621 (2018) (noting that "the Arbitration Act requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted'").

To resolve any doubt, the United States Supreme Court has repeatedly held that "[s]tate and federal courts must enforce the [FAA] . . . with respect to all arbitration agreements covered by that statute." *Marmet Health Care Center, Inc. v. Clayton Brown*, 565 U.S. 530, 530-31 (2012). Under the FAA, a court must compel arbitration if it finds that: (1) a valid arbitration agreement exists between the parties; and (2) the dispute falls within the scope of the agreement. *See*, *e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *Miron v.*

---

[30] Muñoz Dec., Ex. B at p. 6, C at p. 6, D at p. 11.

*BDO Seidman, LLP*, 342 F. Supp. 2d 324 (E.D. Pa. 2004). For the reasons above, a valid arbitration

agreement exists between the parties and the claims at issue fall within the scope of that agreement.

The merits of this case are not at issue for purposes of this motion. *See AT&T Tech., Inc.*

*v. Comm. Workers of Am.*, 475 U.S. 643, 649 (1986). Rather, the FAA requires a court to engage:

> [I]n a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement. . . . If . . . the court determines that an agreement exists and that the dispute falls within the scope of that agreement, it then must refer the matter to arbitration without considering the merits of the dispute.

*PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d. Cir. 1990) (citations omitted), overruled

on other grounds; *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002). The merits of the

parties' claims are thus irrelevant to this motion.

In short, each of the FAA's requirements is satisfied. A written Arbitration Provision exists,

the dispute falls within the scope of the Arbitration provision, and the Arbitration Provision is valid

and enforceable. *See* 9 U.S.C. §§ 1-2; *PaineWebber*, 921 F.2d at 511. The Court should therefore

grant SoLo's motion and compel Checchia to pursue his claims individually in private, binding

arbitration.

### 2.      The Arbitration Provision is Enforceable under Pennsylvania Law. [31]

The Arbitration Provision is enforceable under Pennsylvania law. "The FAA 'was enacted

in 1925 in response to widespread judicial hostility to arbitration agreements,'" and it "reflects a

'liberal federal policy favoring arbitration.'" *Masoner v. Educ. Mgmt. Corp.*, 18 F. Supp. 3d 652,

658 (W.D. Pa. 2014) (internal citations omitted); *see also Styczynski v. MarketSource, Inc.*, 340 F.

---

[31] As discussed in this Part and *infra* at Part III(B)(3), the Arbitration Agreement is enforceable regardless of whether California or Pennsylvania law applies. In this Motion SoLo directly addresses both California and Pennsylvania law.

Supp. 3d 534, 540 (E.D. Pa. 2018) (holding that the FAA "requires courts to enforce valid arbitration agreements").

"Agreements appearing on internet webpages are often referred to as either 'clickwrap' or 'browserwrap' agreements. A clickwrap agreement generally requires a webpage user to actively consent to terms or conditions, such as by clicking 'accept' or checking a dialog box to proceed with an internet transaction." *Putt v. TripAdvisor, Inc.*, 2021 WL 242470, at \*6 (E.D. Pa. 2021). Here, Checchia was provided with the Terms and Conditions during the sign up process and needed to first check a box below the hyperlink to the Terms and Conditions stating "I agree to SoLo's Terms & Conditions," and then after clicking that box, click another box to continue through the process.[32] Therefore, Checchia's initial assent to the Arbitration Provision was a clickwrap agreement. *See Putt*, 2021 WL 242470 at \*6.

"Courts routinely uphold clickwrap agreements." *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020) (quoting *Meyer v. Uber Tech.*, 868 F.3d 66, 75 (2d Cir. 2017)); *Putt*, 2021 WL 242470 at \*6 ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"); *Liptak v. Accelerated Inventory Mgmt., LLC*, No, 2:20-CV-967, 2021 WL 650514, at \*2 (W.D. Pa. Feb. 19, 2021) (compelling arbitration and holding that "because clickwrap agreements are generally enforced by the courts and because of the strong federal policy favoring arbitration, the arbitration provision in the clickwrap agreement shall be enforced"); *Zabokritsky v. JetSmarter, Inc.*, 2019 WL 2563738, at \*3 (E.D. Pa. 2019) ("Absent a showing of fraud, failure to read an enforceable clickwrap agreement, as with any binding contract, will not excuse compliance with its terms." (quoting *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007)).

---

[32] Muñoz Dec. at ¶¶ 10-11, Ex. A.

In *HealthplanCRM*, the Western District of Pennsylvania enforced an arbitration agreement contained in an electronic agreement involving less evidence of assent than exists here, holding that web-based agreements to arbitrate are enforceable where "notice of the agreement 'was reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'" *HealthplanCRM*, 458 F. Supp. 3d at 331 (W.D. Pa. 2020) (acknowledging the dispute "concerns an arbitration agreement in an interstate commercial contract, and so is governed by the Federal Arbitration Act"). The court concluded that while the *HealthplanCRM* agreement "does not ask its users to check an 'I Accept' box," the agreement had "a similar psychological effect" because it placed an explicit warning, directly below a log-in button, stating that use of the program constitutes acceptance of the hyperlinked agreement. *Id.* at 334.

Here, as discussed above, Checchia initially agreed to the Terms and Conditions during the sign up process by first checking a box stating "I agree to SoLo's Terms & Conditions" below a hyperlink to the Terms and Conditions, and then clicking another box to continue through the sign-up process.[33] Then Checchia reaffirmed his obligations under the Terms and Conditions roughly twice a month for a total of nineteen times.[34] Simply put, the Terms and Conditions and Arbitration Provision are enforceable under Pennsylvania law. *See, e.g., HealthplanCRM,* 458 F. Supp. 3d at 331; *Liptak,* 2021 WL 650514, at *2 (compelling arbitration and holding that "because clickwrap agreements are generally enforced by the courts and because of the strong federal policy favoring arbitration, the arbitration provision in the clickwrap agreement shall be enforced"); *Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021) (same).

---

[33] Muñoz Dec. at ¶¶ 10-11, Ex. A.
[34] Wildeman Dec. at ¶¶ 7-8, Ex. A at 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38. Pennsylvania courts enforce arbitration provisions that are incorporated by reference into a contract. See, e.g., *In re Est. of Atkinson*, 231 A.3d 891, 899 (Pa. Super. 2020) (enforcing arbitration provision contained in a separate document that was incorporated by reference into the contract at issue).

### 3.     The Arbitration Agreement is Equally Enforceable Under California Law.

In determining whether a valid arbitration agreement exists via SoLo's account creation process, this Court must look to ordinary state-law principles governing contract formation. *Clymer v. Jetro Cash and Carry Enterprises, Inc.*, 334 F. Supp. 3d 683, 690 (E.D. Pa. 2018). "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Under California law mutual assent is the touchstone of any enforceable contract. *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862 (2016). Mutual assent "is determined under an objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100, 162 (2013). Mutual assent can be established through actual or constructive knowledge of the contract terms. *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910 (N.D. Cal. 2011). Applying these traditional contract principles, courts examine whether the presentation of the terms were clearly presented to the user, whether the user had an opportunity to read the agreement, and whether the user manifested an unambiguous acceptance of the terms. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 28–32 (2nd Cir. 2002) (applying California law).

Turning to SoLo's presentation of its Terms and Conditions during account creation, the D.C. district court recently held in *Gambo v. Lyft* that a sign-up process manifestly similar to that of the instant case bound a plaintiff-user to an online platform's terms and conditions, which included an arbitration provision. --- F.Supp.3d. ---, 2022 WL 16961132, at *5 (D.C. Nov. 16, 2022). In *Gambo*, the plaintiff-user was presented at sign-up with a screen containing a checkbox seeking assent to the statement "I understand and agree to Lyft's Terms of Service and Privacy

Policy." *Id.* at *1. The text included a hyperlink to the Terms and Service Agreement that was in effect at the time, and users had the opportunity to scroll through and review those terms. *Id.* Much like in the instant case, users were required to check the checkbox in order to proceed to use the platform. *Id.* Applying both California and D.C. contract law, the court held "[u]nder these circumstances, '[a]ny reasonable smartphone user would understand that' by clicking on that box and then clicking on 'Next,' he was agreeing to those terms." *Id.* at *6 (quoting *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *5 (D.C. 2016)). Accordingly, the user was bound by this electronic agreement, which was reasonably communicated to him regardless of whether he actually read it, and the arbitration agreement therein was enforceable. *Id.*

In all respects, this case is analogous to *Gambo*. Here, as in *Gambo*, the user was presented with a sign-up page that contained a hyperlink to the relevant Terms and Conditions. *Id.* Here, as in *Gambo*, the Terms and Conditions were conspicuous. *Id.* And here, as in *Gambo*, the user was required to click on a box next to the phrase "I agree to SoLo's Terms & Conditions," expressly and directly manifesting his assent to the agreement. *Id.* Just like the plaintiff-user in *Gambo*, Checchia is bound by the Terms and Conditions, and the arbitration agreement is enforceable.

This conclusion is underscored by the holding in *Selden*, in which the court found that merely providing the terms and policies with hyperlinks is enough to place the user on reasonable notice that by signing up he was agreeing to be bound by the agreement, regardless of whether he actually read it. 2016 WL 6476934, at *5. There, the arbitration agreement was enforceable even without the user checking a box that expressly manifested his agreement to the same. *Id.* It follows that, here, the arbitration provision here is enforceable because Checchia not only had reasonable notice that he was agreeing to be bound by the Terms and Conditions, but he also manifestly and directly expressed his agreement to the same when he checked the box.

In addition to *Gambo* and *Selden*, courts applying California law have consistently recognized that clicking some variation of an "Agree" button in the course of creating an online account or using online services constitutes objective manifestation of a user's assent thereto and creates an enforceable contract. For example, in *Swift*, the court enforced an electronic agreement presented during sign-up that was materially similar to SoLo's sign-up process. 805 F. Supp. 2d at 911–12. There, the presentation required the consumer to click an "Accept" button that was directly above (1) a hyperlink to a video-game application's terms of service, thereby providing the consumer with actual "access to the terms of service," and (2) a warning that stated clicking on the "Accept" button served as assent to the terms of service. *Id.* The *Swift* court held that by clicking "Accept," the plaintiff-consumer agreed to the defendant's terms of service, including the arbitration clause contained therein. *Id.*; *see also, e.g.*, *Moule v. United Parcel Serv. Co.*, No. 1:16-CV-00102-JLT, 2016 WL 3648961, at *4-5 (E.D. Cal. July 7, 2016 (holding consumer assented to arbitration clause in UPS online terms and conditions where consumer clicked "Yes" button directly above hyperlink to terms and condition and text that stated "By clicking the Yes button, you agree to the UPS Tariff/Terms and Conditions"); *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *5 (N.D. Cal. June 25, 2014) (holding plaintiff assented to online terms and arbitration provision by clicking button to continue registration that was located near a hyperlink to the terms).

Finally, courts have upheld and enforced the presentation of terms on Facebook's sign-up page, which is also materially similar to SoLo's sign-up process. *In re Facebook Biometric Information Privacy Litig.*, 185 F. Supp. 3d 1155, 1166–67 (N.D. Cal. 2016). Like SoLo, Facebook's sign-up page contains a text notice directly below a "sign up" button that states "[b]y clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and

that text-notice is hyperlinked to Facebook's terms of service. *Id.* In *Facebook Biometric*, the court held that by clicking "Sign Up" in the face of this conspicuous notice, a plaintiff-user agreed to, and was bound by, Facebook's terms of service, including the choice-of-law provision contained therein. As found in *Gambo*, *Selden*, *Swift*, *Facebook Biometric*, and other similar cases, the presentation of an electronic agreement during sign-up creates an enforceable contract between a Borrower and SoLo via the Terms and Conditions.[35]

In short, SoLo provided Checchia with conspicuous and effective notice of SoLo's Terms and Conditions, afforded Checchia an opportunity to review the Terms and Conditions, and placed Checchia on notice that he was agreeing to the Terms and Conditions and thereby contracting with SoLo. By registering as a Borrower through the website and accepting the Terms and Conditions, Checchia manifested his unambiguous acceptance of the Terms and Conditions, including the Arbitration Provision.

## C. THE CLAIM IN THE COMPLAINT FALLS WITHIN THE PARTIES' AGREEMENT TO ARBITRATE.

### 1. The Arbitrator Determines Arbitrability.

Once it is established that the parties have entered into an arbitration agreement, the next question is whether the dispute falls within the parties' agreement. In this case, that question is reserved for the arbitrator, not this Court.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) When an arbitration agreement

---

[35] The result is the same under law. Pennsylvania courts have held that, under Pennsylvania law, shrinkwrap and clickwrap agreements are valid and enforceable. *Feldman*, 513 F. Supp. 2d at 236 (holding that a clickwrap agreement is enforceable); *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 118 (W.D. Pa. 2019) (same). This is addressed in greater detail *supra* at Part III(B)(2).

17

"delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524, 529 (2019); *see also HealthplanCRM*, 458 F. Supp. 3d at 313-14 (holding that where the parties' contract provides a clear and unmistakable delegation of arbitrability issues to the arbitrator, the arbitrator must decide any objections to the arbitrability of specific claims).

AAA Rule 7 provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement ***or the arbitrability of any claim or counterclaim.***"[36] As recently found by the Western District of Pennsylvania, incorporating the AAA Rules into an arbitration clause may constitute clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability. *HealthplanCRM*, 458 F. Supp. 3d at 313-14*. at 327; see also Deardorff v. Cellular Sales of Knoxville, Inc.* 2022 WL 407396, *7 (E.D. Pa. 2022) (on delegating the issue of arbitrability, "[i]ncorporation by reference to [] AAA rules is sufficient. . . ."). The Arbitration Provision in SoLo's Terms and Conditions states that the arbitration will be administered by the AAA in accordance with the AAA Rules.[37] By adopting the AAA Rules (which allow the arbitrator to decide her own jurisdiction, including whether a claim is arbitrable), Checchia and SoLo have presented "clear and unmistakable evidence" that they agreed to arbitrate arbitrability. *Id*. Therefore, the parties have contractually agreed that an arbitrator, not the Court, will decide the arbitrability question.[38]

---

[36] AAA Commercial Arbitration R-7 (emphasis added).

[37] See Muñoz Dec., Ex. B at p. 6, Ex. C at p. 6, and Ex. D at pp. 11-12.

[38] Checchia may seek to argue that, even though the arbitration clause ordinarily would be enforceable under Pennsylvania law, the arbitration clause is unconscionable and therefore unenforceable. In *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 321 (W.D. Pa. 2020), the court observed that where the arbitration agreement clearly and unmistakably delegated questions of arbitrability to the arbitrator, the court must not decide objections related to arbitrability. As noted above, parties can agree to have an arbitrator decide issues of arbitrability.

## 2.    The Arbitration Clause is Broad and Encompasses the Claim in this Case.

The question of arbitrability notwithstanding, the allegations in the complaint establish that the claims are within the broad scope of the arbitration clause. *See Miron*, 342 F. Supp. 2d at 330 (E.D. Pa. 2004) ("When an arbitration clause provides for arbitration of all matters 'arising under' or 'arising out of' a particular agreement, the clause is typically construed broadly to suggest that a given dispute is arbitrable"); *Medtronic Ave Inc. v. Cordis Corp.*, 100 Fed. Appx. 865, 868–69 (3rd Cir. 2004) (compelling arbitration where the arbitration clause was broad and governed "any dispute, claim, or controversy arising from or relating to this Agreement or alleged breaches thereof"); *Richards v. American Academic Health System LLC*, 2020 WL 2615688, at *8 (E.D. Pa. 2020) ("The Third Circuit has specifically singled out arbitration clauses containing the phrases 'arising under' and 'arising out of' as having expansive coverage"); *Clerk v. First Bank of Del.*, 735 F.Supp.2d 170 (E.D. Pa. 2010) (compelling arbitration in case involving alleged LIPL, UTPCPL, and CDCA violations).

Checchia's claims are squarely within the definition of an arbitrable "dispute" under the Arbitration Provision. A court will not deny a request to compel arbitration unless it can find that the arbitration clause is ***not*** susceptible to an interpretation that covers the asserted dispute.

> When faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration . . . Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

*Davisson*, 644 F.Supp.2d at 959. The *Davisson* court noted that because the arbitration clause at issue "provides for arbitration of any dispute, it is broad in scope . . . [and thus] all of the parties claims are arbitrable." *Id*. at 959-60.

19

The Arbitration Clause here defines "Disputes" subject to arbitration broadly to include "any dispute, claim, or controversy arising out of or relating to this agreement or any alleged breach, termination, enforcement, or interpretation thereof, including statutory consumer claims, or to the use of the service."[39]

Checchia's Complaint alleges that he "obtained various cash advances through the Solo app" and that SoLo allegedly violated the UTPCPL, the LIPL, and the CDCA in connection with these alleged advances.[40] Checchia seeks to represent a class of individuals that he alleges "obtained an advance or loan through the Solo app."[41] The UTPCPL is a consumer statute. *See McLean v. Big Lots Inc*., 542 F. Supp. 3d 343, 349 (W.D. Pa. 2021). The claims plainly fall within the broad scope of the Arbitration Provision. The matter alleged in Checchia's Complaint, along with any gateway question, falls within the arbitration clause. Because Checchia's claims are squarely within the scope of Arbitration Provision, the Court should compel Checchia to pursue them individually in private, binding arbitration.

## D. SOLO DID NOT WAIVE ITS RIGHT TO ARBITRATE.

There is no feasible argument that SoLo has waived its right to arbitrate in this action. "Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred and will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Aluminium Bahrain B.S.C. v. Dahdaleh*, 17 F. Supp. 3d 461, 475–76 (W.D. Pa. 2014) (quoting *In re Pharm. Benefit Managers Antitrust Litigation ("PBM")*, 700 F.3d 109, 117 (3d Cir. 2012)). Here, the suit is in its infancy, and no discovery has been exchanged. Therefore, SoLo has not waived its right to compel

---

[39] See Muñoz Dec., Ex. B at pp. 5-6, Ex. C at p. 6, and Ex. D at p. 11.
[40] (Compl., Dkt. 1-2 at ¶¶ 1, 60, 76, 100, 104, 110.)
[41] *Id*. at ¶ 88.

arbitration. *See Comrey v. Discover Fin. Servs., Inc.*, 806 F. Supp. 2d 778, 785 (M.D. Pa. 2011) ("A party does not waive the right to arbitration merely by answering on the merits, asserting a counterclaim or even engaging in limited discovery"); *GGIS Ins. Servs., Inc. v. Lincoln Gen. Ins. Co.*, 773 F. Supp. 2d 490, 507 (M.D. Pa. 2011) (holding a court should not find waiver unless a party's conduct has gained that party "an undue advantage or resulted in prejudice to another," such as by waiting for adverse rulings on pretrial motions or waiting until the case is ready for trial before seeking arbitration).

**E.      ARBITRATION SHOULD BE COMPELLED ON AN INDIVIDUAL BASIS.**

The Court's order compelling arbitration of this case must direct that the arbitration be limited to adjudication of Checchia's individual claims and not those of the class or subclass his complaint alleges. The Terms and Conditions state, in relevant part:

> YOU ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PROCEEDING....THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF ANY CLASS OR REPRESENTATIVE PROCEEDING....[42]

Checchia's class action waiver is enforceable. *See Torres v. CleanNet, U.S.A., Inc.*, 90 F. Supp. 3d 369, 381 (E.D. Pa. 2015); *Clerk,* 735 F. Supp. 2d at 188.

**F.      THIS COURT SHOULD DISMISS THE CLAIMS AGAINST SOLO IN LIGHT OF THE AGREEMENT TO ARBITRATE.**

There is no dispute as to the validity of the agreement to arbitrate. Interstate commerce is present, a valid and enforceable written Arbitration Provision exists, the claims fall within the scope of the Arbitration Provision, and Checchia acknowledged that he understood and agreed to

---

[42] See Muñoz Dec., Ex. B at p. 6, Ex. C at p. 5, Ex. D at p. 11.

it. Under the FAA and the written arbitration provision executed by the parties, Checchia must pursue his claims against SoLo individually in private arbitration.

When presented with a valid, enforceable arbitration agreement, courts may dismiss actions in favor of arbitration. *See*, *e.g.*, *Shaffer v. Graybill*, 68 Fed. Appx. 374, 376 (3d Cir. 2003). The Court should reach the same result here and dismiss the action in favor of arbitration. *See Mumma v. Pennsy Supply, Inc.*, 448 Fed. Appx. 295, 297 (3d Cir. 2011) (dismissing a case and sending it to private arbitration where there was an arbitration clause between the parties); *Randolph*, 531 U.S. at 86-87. Alternatively, at minimum, the Court should stay the claims against SoLo and enter an Order compelling the parties to engage in individual private arbitration. *See* 9 U.S.C. § 3 (providing that the District Court stay an action in which the issue in dispute is referable to arbitration).

## IV.    **CONCLUSION**

For all these reasons, SoLo respectfully requests that the Court compel Checchia to pursue his claims against it individually in private, binding arbitration and dismiss the claims against SoLo with prejudice.

Respectfully submitted,

Dated: March 8, 2023

/s/ *Andrew K. Stutzman*
Andrew K. Stutzman
Christopher A. Reese
Stradley Ronon Stevens & Young, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103-7098
(856) 321-2400
(856) 321-2415 (fax)
astutzman@stradley.com
creese@stradley.com
*Attorneys for Defendant, SoLo Funds, Inc.*

**CERTIFICATE OF SERVICE**

I, Christopher A. Reese, Esquire, hereby certify that on this 8th day of March 2023, I caused a true and correct copy of the foregoing to be filed via the Court's ECF system and to be served on Plaintiff by regular mail.

/s/ Andrew K. Stutzman
Andrew K. Stutzman

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEVEN CHECCHIA, individually and as a representative of the Class,<br><br>    Plaintiff,<br><br>    v.<br><br>SOLO FUNDS, INC.,<br><br>    Defendant. | Case No.: 2:23-cv-00444 |

**DECLARATION OF EDDY MUÑOZ IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS PROCEEDINGS**

I, Eddy Muñoz, pursuant to 28 U.S.C. § 1746, declare as follows:

1.    This Declaration is made in connection with the matter of *Steven Checchia, individually and on behalf of all others similarly situated v. SoLo Funds, Inc.*

2.    I am over 18 years of age and fully competent and authorized to make this Declaration. I have been employed by SoLo Funds Inc. ("SoLo") since February 2020 and have been Director of Product since September 2021. My job responsibilities at SoLo have always related to SoLo's mobile application (the "Mobile Application"), and as Director of Product I have primary responsibility for the Mobile Application. Since I have become Director of Product, no changes are made to the Mobile Application without my knowledge and/or consent. As Director of Product, I work with, and am familiar with, the Mobile Application and the user experience with the Mobile Application. I have knowledge and familiarity with the screens displayed to users on both Android and iOS devices when accessing the Mobil Application, including when a new user signs up to use the SoLo platform. All of the matters set forth below are based upon my review of records and documents regularly maintained in the ordinary course of business or within my personal

1

knowledge, and, if called upon as a witness to testify, I would competently testify under penalty of perjury that these facts are, to the best of my knowledge, true and correct. I am authorized to provide this Declaration on SoLo's behalf, and I am submitting this Declaration in support of SoLo's Motion to Compel Arbitration and to Dismiss Proceedings in the above-captioned case.

3.   SoLo provides an online platform ("SoLo's Platform") that connects third-parties seeking to borrow money (called "Borrowers") with third-parties offering to lend money (called "Lenders"). The platform is accessible online at http://www.solofunds.com and via the Mobile Application.

4.   I am familiar with SoLo's processes and procedures for maintaining the Mobile Application, including updating the code that dictates the screens displayed to users of the Mobile Application and the behavior of the Mobile Application, including the manner in which SoLo's Terms and Conditions are presented to users. I have personally routinely reviewed live portions of the Mobile Application relating to the sign-up screens and consent events utilized by SoLo as discussed below.

5.   The records I have reviewed are maintained by SoLo in the normal course of their business and were made at or near the time of the events, conditions, or occurrences they describe.

6.   It is the regular and routine practice and habit of SoLo's business activity to make, prepare, keep, and maintain records regarding user activity and the Mobile Application that I have reviewed and from which I derived my knowledge herein.

7.   SoLo's records indicate that Borrower Steven Checchia ("Checchia") created his SoLo account (the "Checchia Account") on February 26, 2022. SoLo's records indicate that Checchia signed up for the Checchia Account through SoLo's Mobile Application.

2

8. At all times relevant to this litigation, including on February 26, 2022, no user could lend or borrow money via SoLo's Platform without first creating an account, which required acceptance of the then-current version of SoLo's Terms and Conditions (among other agreements).

9. To sign up for SoLo's Platform through the Mobile Application, a user navigates through a series of screens through which the user provides various pieces of information, including a telephone number and a one-time passcode.

10. The final page of this process includes a heading: "Last Step!" (the "Final Page"). On this page the user is required to provide various pieces of personal information, including name, date of birth, e-mail address, physical address, and social security number. Below where the aforementioned information is entered by the user, there are six hyperlinks. By clicking the first of these hyperlinks, a webview in the Mobile Application is opened that enables the user to view the then-current version of SoLo's Terms and Conditions. Immediately below those hyperlinks are two checkboxes. The first box states "The SSN I entered is my own" and the second box states "I agree to SoLo's Terms & Conditions." After a user checks both boxes, the user must click on the button titled "Looks Good, Let's Go" to complete the sign-up process, create a SoLo account, and be eligible to borrower or lend through SoLo's Platform. A user cannot complete the sign-up process, create a SoLo Account, or proceed to the next page until both boxes are checked by the user. The screenshot attached as Exhibit "A" is an accurate representation of the Final Page as it currently appears on the Mobile Application and as it has appeared on the Mobile Application since at least February 26, 2022.

11. Therefore Exhibit A accurately reflects what was displayed to Checchia when he signed-up for SoLo's platform, and Checchia necessarily checked the box stating "I agree to SoLo's Terms & Conditions" since he completed the sign-up process.

3

12. By creating his SoLo account on February 26, 2022, Checchia agreed to SoLo's then-current Terms and Conditions. A true and accurate copy of the Terms and Conditions in effect as of February 26, 2022 is attached hereto as Exhibit "B."

13. SoLo periodically updates its Terms and Conditions. After February 26, 2022, SoLo's Terms and Conditions were updated twice, once on March 17, 2022 and once on December 21, 2022. True and accurate copies of the March 17, 2022 Terms and Conditions and the December 21, 2022 Terms and Conditions are attached as Exhibits "C" and "D," respectively.

14. SoLo's current Terms and Conditions are available to Checchia through the Mobile Application, by hyperlink on SoLo's homepage, www.solofunds.com, and directly at https://solofunds.com/terms/#:~:text=The%20SoLo%20Entities%20make%20no,from%20your%20access%20to%20or. The Terms and Conditions are publicly available--no SoLo account is required to access them, and it is accessible from every page on SoLo's website and on the Mobile Application.

15. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 7, 2023

_____
Eddy Muñoz
Director of Product

4

# EXHIBIT A

8:08

Welcome to SoLo!                    Get help

# Last Step!

You'll need to enter the following information to get started with SoLo.

| First Name | Last Name |

Full name is required

| Email |

Please use a valid email

| Date of Birth |

| Street Address |

| Street Address (line 2) |

| City |

| State | Zipcode |

| Social Security Number |

1) The Taxpayer Identification Number or Social Security Number I provided is correct;
2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject

8:08

**Welcome to SoLo!**  Get help

Social Security Number

1) The Taxpayer Identification Number or Social Security Number I provided is correct;
2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3) I am a U.S. citizen or other U.S. person; and
4) The FATCA code(s) entered (if any) indicating that I am exempt from FATCA reporting is correct.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

**Terms of Service**

**Privacy Policy**

**E-Sign Disclosure**

**SynapseFi's Terms of Service**

**SynapseFi's Privacy Policy**

**Evolve's Deposit Agreement**

☐ The SSN I entered is my own

☐ I agree to SoLo's Terms & Conditions

**Looks Good, Let's Go**

# EXHIBIT B

https://solofunds.com/terms/

# Terms

<u>View Deposit Agreement</u>

THIS MOBILE APPLICATION IS POWERED BY SOLO FUNDS, INC. ("**SoLo**"). By using this mobile application (the "**Platform**"), establishing an account, or applying for a loan through the Platform (collectively, the "**Services**"), you consent to these Terms and Conditions, the SoLo Privacy Policy, and the E-SIGN Disclosure (collectively, the "**Agreement**") between you, the user ("**you**" or "**your**"), and us.

These Terms and Conditions govern use of the Services. Please note that your application for any loan through the Platform is subject to a separate agreement with the third party loan provider that will be provided to you upon application. THIS AGREEMENT DOES NOT COVER THE LOAN APPLIED FOR OR OBTAINED THROUGH THE PLATFORM, unless otherwise stated herein.

You are responsible for your use of the Services and for any consequences thereof. You are only authorized to access the Platform or use the Services (regardless of whether your access or use is intended) if you agree to abide by all applicable laws and to this Agreement. If you use the Services in violation of any law or if you attempt to defraud SoLo or its users in any way, please be aware that SoLo will prosecute you to full extent of the law. We reserve the right at all times (but will not have an obligation) to suspend and or terminate users without liability to you.

You will be notified in the event that your consent to additional terms and conditions is necessary to participate in certain other services provided through the Platform. SoLo may modify this Agreement from time to time and such modification shall be effective upon posting on the Platform. You agree to be bound to any changes to this Agreement when you use the Platform after any such modification is posted. It is therefore important that you review this Agreement regularly upon each use of the Services to ensure you are updated as to any changes.

**THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION THAT AUTHORIZES EITHER PARTY TO ELECT MANDATORY AND BINDING ARBITRATION OF CERTAIN DISPUTES WHERE PERMITTED BY LAW. THE TERMS OF THE ARBITRATION PROVISION ARE SET FORTH IN THE SECTION ENTITLED "RESOLUTION OF DISPUTES BY ARBITRATION." PLEASE READ THIS ARBITRATION PROVISION CAREFULLY.**

*The Platform.* The Platform provides a means by which you may: (1) as a "**Borrower**," submit an application ("**Application**"), and subject to the discretion of other users, obtain a personal loan ("**Loan**"); and/or (2) as a "**Lender**," evaluate Applications and subsequently fund Loans. SoLo is not engaged in the brokering or origination of loans made through the Platform, but merely provides a marketplace for Borrowers and Lenders.

*SoLo is Not a Party to Loan Agreements.* While SoLo may determine your eligibility to access the Platform or to use the Services and may provide functionality utilized by Lenders in evaluating Applications, SoLo is not involved in the decision to fund a Loan and SoLo is not a party to any Loan that was initiated on or through the Services. Any rights arising in connection with the Loan shall be asserted by you solely against the third party provider and you expressly agree not to involve SoLo in any legal dispute you have with a third party provider regarding the Loan. **SOLO IS MAKING NO REPRESENTATIONS AND DOES NOT ENDORSE the accuracy of any information provided on or through the Services. You agree that any and all Loan Agreements you enter into using the Services are at your own risk.** We are not responsible for the actions of our users or your interactions with other users and we advise you to use the Services safely and responsibly. You understand that by using the Services, you may be exposed to content that might be inaccurate, mislabeled or are otherwise deceptive. Under no circumstances will SoLo be liable in any way for any content posted, emailed, transmitted or otherwise made available via the Services or any wrongful or fraudulent action of its users or any other third parties.

*Third Party Content.* The Platform may contain third party content related to third parties (including links to third party websites), which is not owned or controlled by SoLo.

*Access.* Use of the Platform and Services are void where prohibited. By creating a profile ("**Profile**"), you represent and warrant that (a) all information you submit in connection with your Application is complete and accurate; (b) you will maintain the accuracy of such information; (c) the information submitted is your own; and (c) your use of the Services does not violate any applicable law or regulation. SoLo may, in its sole discretion, delay or restrict, either permanently or temporarily, your access to the Services, and may impose conditions or restrictions on your use of the Services.

*Login Protection.* You will not disclose your login credentials (user name or password) to any person. You understand and agree that the we may rely on the use of your login credentials to access your Profile through the Platform and are therefore authorized to act upon instructions and information received from any person that enters your login credentials. You are solely responsible for the activity that occurs on your profile, and you must keep your login credentials secure. You must notify SoLo immediately of any breach of security or unauthorized use of your Profile.

*Social Media Authorization.* You authorize SoLo to utilize information contained in your social media accounts (e.g., Facebook, Instagram, Twitter, LinkedIn) for purposes of augmenting data that you provide to SoLo through the Platform.

*Terms Specific to Borrowers*

- *Eligibility.* By opening an account, you further represent and warrant that (1) you are at least 18 years of age; (2) you are a U.S. citizen or possess a 10-year (non-conditional) Permanent Resident Card; (3) you have the full right and authority to submit the application under applicable law; and (4) all information you provided in your profile is complete and accurate.

https://solofunds.com/terms/

- *Account at Evolve Bank.* To obtain proceeds from Lenders in connection with Loans approved through the Platform, you will be required to open a checking account (an "**Account**") at Evolve Bank & Trust ("**Evolve Bank**"). The Account will be governed by separate terms and conditions with Evolve Bank to which SoLo is not a party.
- *Credit Report Authorization.* By submitting an Application, you authorize SoLo to conduct a credit inquiry (known as a "soft credit pull" or "soft credit inquiry"), the results of which will be used to assist Lenders in making a credit decision. Upon your request, we will provide you with the name and address of any consumer reporting agency from which we obtained your credit report. You expressly represent that you will only submit an Application on your own behalf and that you will not submit an Application authorizing a credit inquiry for any third party.
- *SoLo Score.* You authorize us to utilize data contained in your Application, including supporting documentation provided, information related to your social media accounts, and a credit report, to develop a proprietary score (the "**SoLo Score**"). The SoLo Score will be provided to prospective Lenders to assist in the making of a credit decision without receiving a copy of any such credit report or your Application.
- *Communication.* By providing your telephone number(s) (whether for a cellular phone, other wireless device, fixed-line or landline telephone), you (a) expressly authorize Lender or any third-party debt collector to contact you at the phone number using autodialed, or any other type of calls or voice or text messages, and consent pursuant to the federal Electronic Signatures in Global and National Commerce Act ("**E-Sign Act**"), 15 U.S.C. Section 7001, and (b) represent that the phone number that you have provided belongs to you and not to any other person.
- *Notices.* Unless otherwise required by applicable law, any notice that must be given to you may, at Lender's option, be provided electronically, by telephone, in writing by U.S. Mail or any other manner selected by Lender, in each instance using the contact information Lender or its representative has on file for you.

*Terms Specific to Lenders*

- *Account at Evolve Bank.* To fund Loans approved through the Platform and to receive payment from Borrowers, you will be required to open an Account at Evolve Bank, which shall be governed by separate terms and conditions to which SoLo is not a party.
- *Debt Collection.* For a period of 90 days, SoLo will proactively attempt to collect payment on defaulted loans prior to loans being placed with an external collections agency. Upon successful collections, Lender agrees to pay SoLo a recovery fee . In the event SoLo is unable to collect, Lenders will have the option of entering into a third-party debt collector relationship managed by SoLo, for such services. A commission fee of 30% of the total amount recovered is retained by the collections partner.

*Intellectual Property Rights.* The content on the Platform (the "**Content**") and the Services are subject to copyright and other intellectual property rights under local and

international laws conventions. To the best of its knowledge, SoLo uses only Content that it owns or is otherwise allowed and permitted for use by the owner(s) of the copyrights and other intellectual property rights therein. Content on the Platform is provided to you AS IS only and it may not be used, copied, reproduced, distributed, transmitted, broadcast, displayed, sold, licensed, or otherwise exploited for any other purposes whatsoever without the prior written consent of the respective owners. SoLo reserves all rights not expressly granted in and to the Platform, Services and the Content. You agree to not engage in the use, copying, or distribution of any of the Content or Services other than expressly permitted herein for any commercial purposes. You agree not to circumvent, disable or otherwise interfere with security related features of the Platform or features that prevent or restrict use of Services or copying of any Content or enforce limitations on use of the Platform or any of the Services or Content therein.

Disclaimers, Limitations Of Liability and Indemnity

Please read this section carefully since it limits the liability of SoLo and its parents, subsidiaries, affiliates, related companies, officers, directors, employees, agents, representatives, partners, and licensors (collectively, the "SoLo Entities"). Each of the subsections below only applies up to the maximum extent permitted under applicable law. Some jurisdictions do not allow the disclaimer of implied warranties or the limitation of liability in contracts, and as a result the contents of this section may not apply to you. Nothing in this section is intended to limit any rights you may have which may not be lawfully limited.

A. The Services are Available "AS-IS"

Your access to and use of the Services are at your own risk. You understand and agree that the Services are provided to you on an "AS IS" and "AS AVAILABLE" basis. Without limiting the foregoing, THE SOLO ENTITIES DISCLAIM ALL WARRANTIES AND CONDITIONS, WHETHER EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT.

The SoLo Entities make no warranty and disclaim all responsibility and liability for: (i) any actions of SoLo users; (ii) the completeness, accuracy, availability, timeliness, security or reliability of the Services; (iii) any harm to your computer system, loss of data, or other harm that results from your access to or use of the Services, or any content; (iv) the deletion of, or the failure to store or to transmit, any content and other communications maintained by the Services; (v) whether the Services will meet your requirements or be available on an uninterrupted, secure, or error-free basis. No advice or information, whether oral or written, obtained from the SoLo Entities or through the Services, will create any warranty not expressly made herein.

B. Limitation of Liability

*LIMITATION OF LIABILITY.* **UNLESS APPLICABLE LAW REQUIRES OTHERWISE, YOUR EXCLUSIVE AND MAXIMUM REMEDY AGAINST SOLO OR ITS AFFILIATES**

https://solofunds.com/terms/

**IS A REFUND OF ANY DONATION AMOUNT. NO OTHER REMEDY IS AVAILABLE TO YOU, INCLUDING, BUT NOT LIMITED TO ANY REMEDY FOR INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES. THESE LIMITATIONS APPLY WHETHER YOUR CLAIM ARISES DUE TO SOLO'S (OR ITS AFFILIATES') NEGLIGENCE, OTHER FAULT, ERROR, OMISSION OR NON-PERFORMANCE. NEITHER SOLO NOR ITS AFFILIATES ACCEPT ANY RESPONSIBILITY FOR THE ACTS OR OMISSIONS OF A LENDER OR ANY OTHER USER OF THE PLATFORM.**

C. Indemnification

**Except as otherwise set forth in this Agreement, you agree to release, indemnify, defend, and hold the SoLo Entities harmless from and against any claims, liabilities, actions, proceedings, damages, losses, and expenses, (including without limitation attorneys' fees and costs), or losses of any kind arising out of: (a) any breach of the Agreement by you; (b) your actions and omissions in connection with the Services; (c) any inaccuracies on your Loan Application; (d) your authorization of a credit inquiry; and (e) our actions or omissions, provided that they are taken/omitted in accordance with this Agreement or your instructions. This provision shall survive the termination of this Agreement.**

General Terms

*Events Beyond Control.* Under no circumstances shall SoLo be held liable for any delay or failure in the Platform and/or the Services and/or information on the Platform directly or indirectly resulting from, arising out of, relating to or in connection with events beyond the reasonable control of SoLo, including, without limitation, Internet failures, equipment failures, electrical power failures, strikes, labor disputes, riots, insurrections, civil disturbances, shortages of labor or materials, fires, floods, storms, earthquakes, explosions, acts of God, war, terrorism, intergalactic struggles, governmental actions, orders of courts, agencies or tribunals or non-performance of third parties. The provisions of this paragraph are in addition to, and not intended to limit or modify, the limitation of Limitation of Liability section as stipulated above.

*Governing Law.* This Agreement is governed by California law without regard to its conflicts of law rules, supersedes all prior agreements or understandings between you and us, and cannot be modified orally. You and we agree to submit to the personal jurisdiction of the state and federal courts located in Los Angeles County, California for any actions for which the parties seek to retain the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights, as set forth in the Section entitled "Resolution of Disputes by Arbitration" below.

*DISPUTE RESOLUTION.* IF YOU RESIDE IN THE UNITED STATES, UNLESS OTHERWISE SPECIFIED BY APPLICABLE LAW, YOU AGREE THAT ANY DISPUTE, CLAIM, OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY ALLEGED BREACH, TERMINATION, ENFORCEMENT, OR

https://solofunds.com/terms/

INTERPRETATION THEREOF, INCLUDING STATUTORY CONSUMER CLAIMS, OR TO THE USE OF THE SERVICE (TOGETHER, "**DISPUTES**") WILL BE SETTLED BY BINDING ARBITRATION, EXCEPT THAT EACH PARTY RETAINS THE RIGHT TO SEEK INJUNCTIVE OR OTHER EQUITABLE RELIEF IN A COURT OF COMPETENT JURISDICTION TO PREVENT THE ACTUAL OR THREATENED INFRINGEMENT, MISAPPROPRIATION, OR VIOLATION OF A PARTY'S COPYRIGHTS, TRADEMARKS, TRADE SECRETS, PATENTS, OR OTHER INTELLECTUAL PROPERTY RIGHTS. YOU ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PROCEEDING. UNLESS BOTH YOU PARTIES OTHERWISE AGREE IN WRITING, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF ANY CLASS OR REPRESENTATIVE PROCEEDING.

ANY SUCH ARBITRATION SHALL BE INITIATED AND HELD IN THE OFFICE OF THE AAA IN LOS ANGELES, CALIFORNIA. JUDGMENT ON THE ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

NOTE THAT THIS AGREEMENT TO ARBITRATE CONSTITUTES A TRANSACTION IN INTERSTATE COMMERCE RENDERING THE INTERPRETATION AND ENFORCEMENT OF THIS PROVISION SUBJECT TO THE FEDERAL ARBITRATION ACT. THIS ARBITRATION WILL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ( "**AAA**") UNDER THE COMMERCIAL ARBITRATION RULES AND THE SUPPLEMENTARY PROCEDURES FOR CONSUMER RELATED DISPUTES (THE "**AAA RULES**") THEN IN EFFECT, EXCEPT AS MODIFIED BY THIS SECTION THE AAA RULES ARE AVAILABLE AT www.adr.org/arb_med OR BY CALLING THE AAA AT 1-800-778-7879.

EACH PARTY SHALL BEAR ITS OWN COSTS AND FEES FOR EXPERTS AND ATTORNEYS. THIS EXCLUSIVE ARBITRATION REMEDY SHALL NOT BE AVAILABLE UNLESS INITIATED WITHIN ONE YEAR AFTER THE DISPUTE AROSE. THIS SECTION WILL SURVIVE ANY TERMINATION OF THIS AGREEMENT.

*Use of Affiliates.* We may use affiliates in the provision of the Services. Each affiliate shall be entitled to avail themselves of any and all rights and limitations set forth in these terms and conditions as if the affiliate were SoLo itself (e.g., indemnification and limitation of liability).

*Assignment.* You may not assign or transfer this Agreement, by operation of law, otherwise without prior written consent from us. Any attempt to assign or transfer without such consent will be null; however, we may assign or transfer this Agreement, at our sole discretion, without restriction.

*SoLo Credits*. Solo may, at its discretion, offer credits to its users that can be used for a future transaction in the event of a defaulted loan. Any such credits are non-transferrable and may not be withdrawn for cash value. Such credits may only be redeemed through our Platform. SoLo Credits do not expire.

https://solofunds.com/terms/

*Third Party Beneficiary.* This Agreement does not and is not intended to confer any rights or remedies upon any person other than the parties, including but not limited to any Lender.

*Waiver.* We may delay in enforcing any of our rights under this Agreement without forfeiture. Any waiver by use shall not be deemed a waiver of any other right or of the same right at another time.

*Change in Terms.* We may change the terms and conditions of this Agreement from time to time, at our sole discretion. We may add new terms or delete or amend existing terms, add new services and discontinue existing services, or convert existing services into new services. We will give you reasonable notice in writing or by any method permitted by law of an adverse change to this Agreement. Prior notice may not be given when not required by law or where an immediate change is necessary for security purposes. By continuing to use the Services after any such change, you agree to be bound by the changed terms and conditions of this Agreement as of the effective date of such changes.

*Entire Understanding.* Except as they may be supplemented by additional SoLo policies, guidelines, standards, or terms for a specific feature, service, or offering, this Agreement sets forth the entire understanding and agreement between you and us, whether written or oral, with respect to the subject matter addressed herein, and shall supersede any prior or contemporaneous understandings or agreements with respect to such subject matter.

*Severability.* If any of the provisions of this Agreement are, in whole or in part, determined to be void or invalid, the remainder of this Agreement shall remain in full force and effect.

*Privacy Policy.* Please see our Privacy Policy located here for information about how we collect, use and disclose your information. Disclosed information may include, but is not limited to, your contact information, your identification, information about your use of the Services, information specific to your financial background, and other information relating to financial matters. The information may be disclosed to our affiliates, financial institutions, service providers, governmental or other regulatory agencies (including law enforcement officials within or outside of the United States) and direct marketers.

Last Updated: May 2020

# EXHIBIT C



**Terms**

[View Deposit Agreement](#)

THIS MOBILE APPLICATION IS POWERED BY SOLO FUNDS, INC. ("**SoLo**"). By using this mobile application (the "**Platform**"), establishing an account, or applying for a loan through the Platform (collectively, the "**Services**"), you consent to these Terms and Conditions, the SoLo Privacy Policy, and the E-SIGN Disclosure (collectively, the "**Agreement**") between you, the user ("**you**" or "**your**"), and us.

These Terms and Conditions govern use of the Services. Please note that your application for any loan through the Platform is subject to a separate agreement with the third party loan provider that will be provided to you upon application. THIS AGREEMENT DOES NOT COVER THE LOAN APPLIED FOR OR OBTAINED THROUGH THE PLATFORM, unless otherwise stated herein.

You are responsible for your use of the Services and for any consequences thereof. You are only authorized to access the Platform or use the Services (regardless of whether your access or use is intended) if you agree to abide by all applicable laws and to this Agreement. If you use the Services in violation of any law or if you attempt to defraud SoLo or its users in any way, please be aware that SoLo will prosecute you to the full extent of the law. We reserve the right at all times (but will not have an obligation) to suspend and or terminate users without liability to you.

You will be notified in the event that your consent to additional terms and conditions is necessary to participate in certain other services provided through the Platform. SoLo may modify this Agreement from time to time and such modification shall be effective upon posting on the Platform. You agree to be bound to any changes to this Agreement when you use the Platform after any such modification is posted. It is therefore important that you review this Agreement regularly upon each use of the Services to ensure you are updated as to any changes.

**THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION THAT AUTHORIZES EITHER PARTY TO ELECT MANDATORY AND BINDING ARBITRATION OF CERTAIN DISPUTES WHERE PERMITTED BY LAW. THE TERMS OF THE ARBITRATION PROVISION ARE SET FORTH IN THE SECTION ENTITLED "RESOLUTION OF DISPUTES BY ARBITRATION." PLEASE READ THIS ARBITRATION PROVISION CAREFULLY.**

*The Platform.* The Platform provides a means by which you may: (1) as a "**Borrower**," submit an application ("**Application**"), and subject to the discretion of other users, obtain a personal loan ("**Loan**"); and/or (2) as a "**Lender**," evaluate Applications and subsequently fund Loans. SoLo is not engaged in the brokering or origination of loans made through the Platform, but merely provides a marketplace for Borrowers and Lenders.

*SoLo is Not a Party to Loan Agreements.* While SoLo may determine your eligibility to access the Platform or to use the Services and may provide functionality utilized by Lenders in evaluating Applications, SoLo is not involved in the decision to fund a Loan and SoLo is not a party to any Loan that was initiated on or through the Services. Any rights arising in connection with the Loan shall be asserted by you solely against the third party provider and you expressly agree not to involve SoLo in any legal dispute you have



with a third party provider regarding the Loan. **SOLO IS MAKING NO REPRESENTATIONS AND DOES NOT ENDORSE the accuracy of any information provided on or through the Services. You agree that any and**

**all Loan Agreements you enter into using the Services are at your own risk.** We are not responsible for the actions of our users or your interactions with other users and we advise you to use the Services safely and responsibly. You understand that by using the Services, you may be exposed to content that might be inaccurate, mislabeled or are otherwise deceptive. Under no circumstances will SoLo be liable in any way for any content posted, emailed, transmitted or otherwise made available via the Services or any wrongful or fraudulent action of its users or any other third parties.

*Third Party Content.* The Platform may contain third party content related to third parties (including links to third party websites), which is not owned or controlled by SoLo.

*Access.* Use of the Platform and Services are void where prohibited. By creating a profile ("**Profile**"), you represent and warrant that (a) all information you submit in connection with your Application is complete and accurate; (b) you will maintain the accuracy of such information; (c) the information submitted is your own; and (c) your use of the Services does not violate any applicable law or regulation. SoLo may, in its sole discretion, delay or restrict, either permanently or temporarily, your access to the Services, and may impose conditions or restrictions on your use of the Services.

*Login Protection.* You will not disclose your login credentials (user name or password) to any person. You understand and agree that we may rely on the use of your login credentials to access your Profile through the Platform and are therefore authorized to act upon instructions and information received from any person that enters your login credentials. You are solely responsible for the activity that occurs on your profile, and you must keep your login credentials secure. You must notify SoLo immediately of any breach of security or unauthorized use of your Profile.

*Social Media Authorization.* You authorize SoLo to utilize information contained in your social media accounts (e.g., Facebook, Instagram, Twitter, LinkedIn) for purposes of augmenting data that you provide to SoLo through the Platform.

*Terms Specific to Borrowers*

- *Eligibility.* By opening an account, you further represent and warrant that (1) you are at least 18 years of age; (2) you are a U.S. citizen or possess a 10-year (non-conditional) Permanent Resident Card; (3) you have the full right and authority to submit the application under applicable law; and (4) all information you provided in your profile is complete and accurate.

- *Account at Evolve Bank.* To obtain proceeds from Lenders in connection with Loans approved through the Platform, you will be required to open a checking account (an "**Account**") at Evolve Bank & Trust ("**Evolve Bank**"). The Account will be governed by separate terms and conditions with Evolve Bank to which SoLo is not a party.



● *Credit Report Authorization.* By submitting an Application, you authorize SoLo to conduct a credit inquiry (known as a "soft credit pull" or "soft credit inquiry"), the results of which will be used to assist Lenders in making a credit decision. Upon your request, we will provide you with the name and address of any consumer reporting agency from which we obtained your credit report. You expressly represent that you will only submit an Application on your own behalf and that you will not submit an Application authorizing a credit inquiry for any third party.

● *SoLo Score.* You authorize us to utilize data contained in your Application, including supporting documentation provided, information related to your social media accounts, and a credit report, to develop a proprietary score (the "**SoLo Score**"). The SoLo Score will be provided to prospective Lenders to assist in the making of a credit decision without receiving a copy of any such credit report or your Application.

● *Communication.* By providing your telephone number(s) (whether for a cellular phone, other wireless device, fixed-line or landline telephone), you (a) expressly authorize Lender or any third-party debt collector to contact you at the phone number using autodialed, or any other type of calls or voice or text messages, and consent pursuant to the federal Electronic Signatures in Global and National Commerce Act ("**E-Sign Act**"), 15 U.S.C. Section 7001, and (b) represent that the phone number that you have provided belongs to you and not to any other person.

● *Notices.* Unless otherwise required by applicable law, any notice that must be given to you may, at Lender's option, be provided electronically, by telephone, in writing by U.S. Mail or any other manner selected by Lender, in each instance using the contact information Lender or its representative has on file for you.

*Terms Specific to Lenders*

● *Account at Evolve Bank.* To fund Loans approved through the Platform and to receive payment from Borrowers, you will be required to open an Account at Evolve Bank, which shall be governed by separate terms and conditions to which SoLo is not a party.

● *Recovery.* For a period of 90 days post loan repayment date, SoLo enables proactive repayments by borrowers. For the period between the 36th day after loan funding date and the 90th day after loan repayment date, the lender agrees to pay SoLo a recovery repayment fee equal to 20% of the loan principal. On the 91st day, Lenders will have the option of entering into a third-party debt collector relationship managed by SoLo. A commission fee of 30% of the total amount recovered is retained by the third-party collections partner.

*Intellectual Property Rights.* The content on the Platform (the "**Content**") and the Services are subject to copyright and other intellectual property rights under local and international laws conventions. To the best of its knowledge, SoLo uses only Content that it owns or is otherwise allowed and permitted for use by the owner(s) of the copyrights and other intellectual property rights therein. Content on the Platform is provided to you AS IS only and it may not be used, copied, reproduced, distributed, transmitted,



broadcast, displayed, sold, licensed, or otherwise exploited for any other purposes whatsoever without the prior written consent of the respective owners. SoLo reserves all rights not expressly granted in and to the Platform, Services and the Content. You agree to not engage in the use, copying, or distribution of any of the Content or Services other than expressly permitted herein for any commercial purposes. You agree not to circumvent, disable or otherwise interfere with security related features of the Platform or features that prevent or restrict use of Services or copying of any Content or enforce limitations on use of the Platform or any of the Services or Content therein.

Disclaimers, Limitations Of Liability and Indemnity

Please read this section carefully since it limits the liability of SoLo and its parents, subsidiaries, affiliates, related companies, officers, directors, employees, agents, representatives, partners, and licensors (collectively, the "SoLo Entities"). Each of the subsections below only applies up to the maximum extent permitted under applicable law. Some jurisdictions do not allow the disclaimer of implied warranties or the limitation of liability in contracts, and as a result the contents of this section may not apply to you. Nothing in this section is intended to limit any rights you may have which may not be lawfully limited.

A. The Services are Available "AS-IS"

Your access to and use of the Services are at your own risk. You understand and agree that the Services are provided to you on an "AS IS" and "AS AVAILABLE" basis. Without limiting the foregoing, THE SOLO ENTITIES DISCLAIM ALL WARRANTIES AND CONDITIONS, WHETHER EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT.

The SoLo Entities make no warranty and disclaim all responsibility and liability for: (i) any actions of SoLo users; (ii) the completeness, accuracy, availability, timeliness, security or reliability of the Services; (iii) any harm to your computer system, loss of data, or other harm that results from your access to or use of the Services, or any content; (iv) the deletion of, or the failure to store or to transmit, any content and other communications maintained by the Services; (v) whether the Services will meet your requirements or be available on an uninterrupted, secure, or error-free basis. No advice or information, whether oral or written, obtained from the SoLo Entities or through the Services, will create any warranty not expressly made herein.

B. Limitation of Liability

*LIMITATION OF LIABILITY.* **UNLESS APPLICABLE LAW REQUIRES OTHERWISE, YOUR EXCLUSIVE AND MAXIMUM REMEDY AGAINST SOLO OR ITS AFFILIATES IS A REFUND OF ANY DONATION AMOUNT. NO OTHER REMEDY IS AVAILABLE TO YOU, INCLUDING, BUT NOT LIMITED TO ANY REMEDY FOR INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES. THESE LIMITATIONS APPLY WHETHER YOUR CLAIM ARISES DUE TO SOLO'S (OR ITS AFFILIATES') NEGLIGENCE, OTHER FAULT, ERROR, OMISSION OR NON-PERFORMANCE. NEITHER SOLO NOR ITS AFFILIATES ACCEPT ANY RESPONSIBILITY FOR THE ACTS OR OMISSIONS OF A LENDER OR ANY OTHER USER OF THE PLATFORM.**

C. Indemnification



Except as otherwise set forth in this Agreement, you agree to release, indemnify, defend, and hold the SoLo Entities harmless from and against any claims, liabilities, actions, proceedings, damages, losses, and expenses, (including without limitation attorneys' fees and costs), or losses of any kind arising out of: (a) any breach of the Agreement by you; (b) your actions and omissions in connection with the Services; (c) any inaccuracies on your Loan Application; (d) your authorization of a credit inquiry; and (e) our actions or omissions, provided that they are taken/omitted in accordance with this Agreement or your instructions. This provision shall survive the termination of this Agreement.

General Terms

*Events Beyond Control.*  Under no circumstances shall SoLo be held liable for any delay or failure in the Platform and/or the Services and/or information on the Platform directly or indirectly resulting from,

arising out of, relating to or in connection with events beyond the reasonable control of SoLo, including, without limitation, Internet failures, equipment failures, electrical power failures, strikes, labor disputes, riots, insurrections, civil disturbances, shortages of labor or materials, fires, floods, storms, earthquakes, explosions, acts of God, war, terrorism, intergalactic struggles, governmental actions, orders of courts, agencies or tribunals or non-performance of third parties. The provisions of this paragraph are in addition to, and not intended to limit or modify,  the Limitation of Liability section as stipulated above.

*Governing Law.* This Agreement is governed by California law without regard to its conflicts of law rules, supersedes all prior agreements or understandings between you and us, and cannot be modified orally. You and we agree to submit to the personal jurisdiction of the state and federal courts located in Los Angeles County, California for any actions for which the parties seek to retain the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights, as set forth in the Section entitled "Resolution of Disputes by Arbitration" below.

*DISPUTE RESOLUTION.* IF YOU RESIDE IN THE UNITED STATES, UNLESS OTHERWISE SPECIFIED BY APPLICABLE LAW, YOU AGREE THAT ANY DISPUTE, CLAIM, OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY ALLEGED BREACH, TERMINATION, ENFORCEMENT, OR INTERPRETATION THEREOF, INCLUDING STATUTORY CONSUMER CLAIMS, OR TO THE USE OF THE SERVICE (TOGETHER, "**DISPUTES**") WILL BE SETTLED BY BINDING ARBITRATION, EXCEPT THAT EACH PARTY RETAINS THE RIGHT TO SEEK INJUNCTIVE OR OTHER EQUITABLE RELIEF IN A COURT OF COMPETENT JURISDICTION TO PREVENT THE ACTUAL OR THREATENED INFRINGEMENT, MISAPPROPRIATION, OR VIOLATION OF A PARTY'S COPYRIGHTS, TRADEMARKS, TRADE SECRETS, PATENTS, OR OTHER INTELLECTUAL PROPERTY RIGHTS. YOU ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PROCEEDING. UNLESS BOTH YOU PARTIES OTHERWISE AGREE IN WRITING, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF ANY CLASS OR REPRESENTATIVE PROCEEDING.



ANY SUCH ARBITRATION SHALL BE INITIATED AND HELD IN THE OFFICE OF THE AAA IN LOS ANGELES, CALIFORNIA. JUDGMENT ON THE ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

NOTE THAT THIS AGREEMENT TO ARBITRATE CONSTITUTES A TRANSACTION IN INTERSTATE COMMERCE RENDERING THE INTERPRETATION AND ENFORCEMENT OF THIS PROVISION SUBJECT TO THE FEDERAL ARBITRATION ACT. THIS ARBITRATION WILL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ( "**AAA**") UNDER THE COMMERCIAL ARBITRATION RULES AND THE SUPPLEMENTARY PROCEDURES FOR CONSUMER RELATED DISPUTES (THE "**AAA RULES**") THEN IN EFFECT, EXCEPT AS MODIFIED BY THIS SECTION THE AAA RULES ARE AVAILABLE AT [www.adr.org](www.adr.org) OR BY CALLING THE AAA AT 1-800-778-7879.

EACH PARTY SHALL BEAR ITS OWN COSTS AND FEES FOR EXPERTS AND ATTORNEYS. THIS EXCLUSIVE ARBITRATION REMEDY SHALL NOT BE AVAILABLE UNLESS INITIATED WITHIN ONE YEAR AFTER THE DISPUTE AROSE. THIS SECTION WILL SURVIVE ANY TERMINATION OF THIS AGREEMENT.

*Use of Affiliates.* We may use affiliates in the provision of the Services. Each affiliate shall be entitled to avail themselves of any and all rights and limitations set forth in these terms and conditions as if the affiliate were SoLo itself (e.g., indemnification and limitation of liability).

*Assignment.* You may not assign or transfer this Agreement, by operation of law, otherwise without prior written consent from us. Any attempt to assign or transfer without such consent will be null; however, we may assign or transfer this Agreement, at our sole discretion, without restriction.

*SoLo Credits.* Solo may, at its discretion, offer credits to its users that can be used for a future transaction in the event of a defaulted loan. Any such credits are non-transferrable and may not be withdrawn for cash value. Such credits may only be redeemed through our Platform. SoLo Credits do not expire for active members. Credits expire six months in 00:00 UTC time from the date the member's account is voluntarily closed by the member or involuntarily closed in accordance with this Agreement.

*Third Party Beneficiary.* This Agreement does not and is not intended to confer any rights or remedies upon any person other than the parties, including but not limited to any Lender.

*Waiver.* We may delay in enforcing any of our rights under this Agreement without forfeiture. Any waiver by use shall not be deemed a waiver of any other right or of the same right at another time.

*Change in Terms.* We may change the terms and conditions of this Agreement from time to time, at our sole discretion. We may add new terms or delete or amend existing terms, add new services and discontinue existing services, or convert existing services into new services. We will give you reasonable notice in writing, if required by law, no later than 30 days before the effective date, or by any method permitted by law of an adverse change to this Agreement. Prior notice may not be given when not required by law or where an immediate change is necessary for security purposes. By continuing to use the Services after any such change, you agree to be bound by the changed terms and conditions of this Agreement as of the effective date of such changes.



*Entire Understanding.* Except as they may be supplemented by additional SoLo policies, guidelines, standards, or terms for a specific feature, service, or offering, this Agreement sets forth the entire understanding and agreement between you and us, whether written or oral, with respect to the subject matter addressed herein, and shall supersede any prior or contemporaneous understandings or agreements with respect to such subject matter.

*Severability.* If any of the provisions of this Agreement are, in whole or in part, determined to be void or invalid, the remainder of this Agreement shall remain in full force and effect.

*Privacy Policy.* Please see our Privacy Policy located here for information about how we collect, use and disclose your information. Disclosed information may include, but is not limited to, your contact information, your identification, information about your use of the Services, information specific to your financial background, and other information relating to financial matters. The information may be disclosed to our affiliates, financial institutions, service providers, governmental or other regulatory agencies (including law enforcement officials within or outside of the United States) and direct marketers.

Last Updated: March 17, 2022

# EXHIBIT D



# Terms

<u>View Deposit Agreement</u>

THIS MOBILE APPLICATION IS POWERED BY SOLO FUNDS, INC. ("**SoLo**").  By using this mobile application (the "**Platform**"), establishing an account, or applying for a loan through the Platform (collectively, the "**Services**"), you consent to these Terms and Conditions, the SoLo Privacy Policy, and the E-SIGN Disclosure (collectively, the "**Agreement**") between you, the user ("**you**" or "**your**"), and us.

These Terms and Conditions govern use of the Services. Please note that your application for any loan through the Platform is subject to a separate agreement with the third-party loan provider that will be provided to you upon application. THIS AGREEMENT DOES NOT COVER THE LOAN APPLIED FOR OR OBTAINED THROUGH THE PLATFORM, unless otherwise stated herein.

You are responsible for your use of the Services and for any consequences thereof. You are only authorized to access the Platform or use the Services (regardless of whether your access or use is intended) if you agree to abide by all applicable laws and to this Agreement. If you use the Services in violation of any law or if you attempt to defraud SoLo or its users in any way, please be aware that SoLo will prosecute you to the full extent of the law. We reserve the right at all times (but will not have an obligation) to suspend and or terminate users without liability to you.

You will be notified in the event that your consent to additional terms and conditions is necessary to participate in certain other services provided through the Platform. SoLo may modify this Agreement from time to time and such modification shall be effective upon posting on the Platform. You agree to be bound to any changes to this Agreement when you use the Platform after any such modification is posted. It is therefore important that you review this Agreement regularly upon each use of the Services to ensure you are updated as to any changes.

**THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION THAT AUTHORIZES EITHER PARTY TO ELECT MANDATORY AND BINDING ARBITRATION OF CERTAIN DISPUTES WHERE PERMITTED BY LAW. THE TERMS OF THE ARBITRATION PROVISION ARE SET FORTH IN THE SECTION ENTITLED "RESOLUTION OF DISPUTES BY ARBITRATION." PLEASE READ THIS ARBITRATION PROVISION CAREFULLY.**

*The Platform.* The Platform operates using the Pacific Time Zone and you agree through your use of the Platform to be subject to that time zone for the timing of transactions. The Platform provides a means by which you may: (1) as a "**Borrower**," submit an application ("**Application**"), and subject to the discretion of other users, obtain a personal loan ("**Loan**"); and/or (2) as a "**Lender**," evaluate Applications and subsequently fund Loans. SoLo is not engaged in the brokering or origination of loans made through the Platform, but merely provides a marketplace for Borrowers and Lenders.

*SoLo is Not a Party to Loan Agreements.* While SoLo may determine your eligibility to access the Platform or to use the Services and may provide functionality utilized by Lenders in evaluating Applications, SoLo is not involved in the decision to fund a Loan and SoLo is not a party to any

Loan that was initiated on or through the Services. Any rights arising in connection with the Loan shall be asserted by you solely against the third-party provider and you expressly agree not to involve SoLo in any legal dispute you have with a third-party provider regarding the Loan. **SOLO IS MAKING NO REPRESENTATIONS AND DOES NOT ENDORSE the accuracy of any information provided on or through the Services. You agree that any and all Loan Agreements you enter into using the Services are at your own risk.** We are not responsible for the actions of our users or your interactions with other users and we advise you to use the Services safely and responsibly. You understand that by using the Services, you may be exposed to content that might be inaccurate, mislabeled or are otherwise deceptive. Under no circumstances will SoLo be liable in any way for any content posted, emailed, transmitted, or otherwise made available via the Services or any wrongful or fraudulent action of its users or any other third parties.

*Third Party Content.* The Platform may contain third party content related to third parties (including links to third party websites), which is not owned or controlled by SoLo.

*Access.* Use of the Platform and Services are void where prohibited. By creating a profile ("**Profile**"), you represent and warrant that (a) all information you submit in connection with your Application is complete and accurate; (b) you will maintain the accuracy of such information; (c) the information submitted is your own; and (c) your use of the Services does not violate any applicable law or regulation. SoLo may, in its sole discretion, delay or restrict, either permanently or temporarily, your access to the Services, and may impose conditions or restrictions on your use of the Services.

*Use of Automated Systems.* SoLo is a community platform that provides opportunities for Lenders to assist Borrowers in need of emergency funding. The protection and integrity of the community is paramount to fulfilling SoLo's mission. As a result, you agree not to use or launch any automated system to access the Service. Consequently, any User determined by SoLo to be employing the use of automated systems will cause SoLo to take remedial actions without notice including, but not limited to, the rendering of the prohibited tool in becoming non-operational, account restrictions and/or termination.

*Login Protection.* You will not disclose your login credentials (user name or password) to any person. You understand and agree that we may rely on the use of your login credentials to access your Profile through the Platform and are therefore authorized to act upon instructions and information received from any person that enters your login credentials. You are solely responsible for the activity that occurs on your profile, and you must keep your login credentials secure. You must notify SoLo immediately of any breach of security or unauthorized use of your Profile.

*Social Media Authorization.* You authorize SoLo to utilize information contained in your social media accounts (e.g., Facebook, Instagram, Twitter, LinkedIn) for purposes of augmenting data that you provide to SoLo through the Platform.

*Terms Specific to Borrowers*

- *Eligibility.* By opening an account, you further represent and warrant that (1) you are at least 18 years of age; (2) you are a U.S. citizen or possess a 10-year (non-conditional) Permanent

Resident Card; (3) you have the full right and authority to submit the application under applicable law; and (4) all information you provided in your profile is complete and accurate.

- *Account at Evolve Bank.* To obtain proceeds from Lenders in connection with Loans approved through the Platform, you will be required to open a checking account (an "**Account**") at Evolve Bank & Trust ("**Evolve Bank**"). The Account will be governed by separate terms and conditions with Evolve Bank to which SoLo is not a party. In the event that a borrower becomes delinquent in repayment of a Loan, SoLo may direct the withholding of certain available funds in the Account where applicable under law or regulation to effectuate the terms and conditions of the Loans.

- *Credit Report Authorization.* By submitting an Application, you authorize SoLo to conduct a credit inquiry (known as a "soft credit pull" or "soft credit inquiry"), the results of which will be used to assist Lenders in making a credit decision. Upon your request, we will provide you with the name and address of any consumer reporting agency from which we obtained your credit report. You expressly represent that you will only submit an Application on your own behalf and that you will not submit an Application authorizing a credit inquiry for any third party.

- *SoLo Score.* You authorize us to utilize data contained in your Application, including supporting documentation provided, information related to your social media accounts, and a credit report, to develop a proprietary score (the "**SoLo Score**"). The SoLo Score will be provided to prospective

Lenders to assist in the making of a credit decision without receiving a copy of any such credit report or your Application.

- *Communication.* By providing your telephone number(s) (whether for a cellular phone, other wireless device, fixed-line or landline telephone) and/or e-mail address(es), you (a) expressly authorize Lender, SoLo, and/or any third-party debt collector to contact you at the phone number using autodialed, or any other type of calls or voice or text messages, and consent pursuant to the federal Electronic Signatures in Global and National Commerce Act ("**E-Sign Act**"), 15 U.S.C. Section 7001, (b) represent that the phone number that you have provided belongs to you and not to any other person; (c) expressly authorize Lender, SoLo, and/or any third-party debt collector to contact you at the e-mail address(es) without limitation as to the time of day or night the e-mail is sent or received, and consent pursuant to the E-Sign Act; and (d) represent that the e-mail address(es) that you have provided belongs to you and not to any other person.

- *Notices.* Unless otherwise required by applicable law to be delivered through a specific medium, any notice that must be given to you may, at Lender's option, be provided electronically, by telephone, in writing by U.S. Mail or any other manner selected by Lender, in each instance using the contact information Lender or its representative has on file for you.

*Terms Specific to Lenders*

- *Account at Evolve Bank.* To fund Loans approved through the Platform and to receive payment from Borrowers, you will be required to open an Account at Evolve Bank, which shall be governed by separate terms and conditions to which SoLo is not a party.
- *Recovery.* For a period of 90 days post loan repayment date, SoLo enables proactive repayments by borrowers. For the period between the 36th day after loan funding date and the 90th day after loan repayment date, the lender agrees to pay SoLo a recovery repayment fee equal to 20% of the loan principal. On the 91st day, Lenders will enter into a third-party debt collector relationship managed by SoLo. A commission fee of 30% of the total amount recovered is retained by the third-party collections partner.

*Intellectual Property Rights.* The content on the Platform (the "**Content**") and the Services are subject to copyright and other intellectual property rights under local and international laws conventions. To the best of its knowledge, SoLo uses only Content that it owns or is otherwise allowed and permitted for use by the owner(s) of the copyrights and other intellectual property rights therein. Content on the Platform is provided to you AS IS only and it may not be used, copied, reproduced, distributed, transmitted, broadcast, displayed, sold, licensed, or otherwise exploited for any other purposes whatsoever without the prior written consent of the respective owners. SoLo reserves all rights not expressly granted in and to the Platform, Services, and the Content. You agree to not engage in the use, copying, or distribution of any of the Content or Services other than expressly permitted herein for any commercial purposes. You agree not to circumvent, disable, or

otherwise interfere with security related features of the Platform or features that prevent or restrict use of Services or copying of any Content or enforce limitations on use of the Platform or any of the Services or Content therein.

Disclaimers, Limitations Of Liability and Indemnity

Please read this section carefully since it limits the liability of SoLo and its parents, subsidiaries, affiliates, related companies, officers, directors, employees, agents, representatives, partners, and licensors (collectively, the "SoLo Entities"). Each of the subsections below only applies up to the maximum extent permitted under applicable law. Some jurisdictions do not allow the disclaimer of implied warranties or the limitation of liability in contracts, and as a result the contents of this section may not apply to you. Nothing in this section is intended to limit any rights you may have which may not be lawfully limited.

1. The Services are Available "AS-IS"

Your access to and use of the Services are at your own risk. You understand and agree that the Services are provided to you on an "AS IS" and "AS AVAILABLE" basis. Without limiting the foregoing, THE SOLO ENTITIES DISCLAIM ALL WARRANTIES AND CONDITIONS, WHETHER EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT.

The SoLo Entities make no warranty and disclaim all responsibility and liability for: (i) any actions of SoLo users; (ii) the completeness, accuracy, availability, timeliness, security or reliability of the Services; (iii) any harm to your computer system, loss of data, or other harm that results from your access to or use of the Services, or any content; (iv)

the deletion of, or the failure to store or to transmit, any content and other communications maintained by the Services; (v) whether the Services will meet your requirements or be available on an uninterrupted, secure, or error-free basis. No advice or information, whether oral or written, obtained from the SoLo Entities or through the Services, will create any warranty not expressly made herein.

1. Limitation of Liability

***LIMITATION OF LIABILITY.* UNLESS APPLICABLE LAW REQUIRES OTHERWISE, YOUR EXCLUSIVE AND MAXIMUM REMEDY AGAINST SOLO OR ITS AFFILIATES IS A REFUND OF ANY DONATION AMOUNT. NO OTHER REMEDY IS AVAILABLE TO YOU, INCLUDING, BUT NOT LIMITED TO ANY REMEDY FOR INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES. THESE LIMITATIONS APPLY WHETHER YOUR CLAIM ARISES DUE TO SOLO'S (OR ITS AFFILIATES') NEGLIGENCE, OTHER FAULT, ERROR, OMISSION OR NON-PERFORMANCE. NEITHER SOLO NOR ITS AFFILIATES ACCEPT ANY RESPONSIBILITY FOR THE ACTS OR OMISSIONS OF A LENDER OR ANY OTHER USER OF THE PLATFORM.**

1. Indemnification

**Except as otherwise set forth in this Agreement, you agree to release, indemnify, defend, and hold the SoLo Entities harmless from and against any claims, liabilities, actions, proceedings, damages, losses, and expenses, (including without limitation attorneys' fees and costs), or losses of any kind arising out of: (a) any breach of the Agreement by you; (b) your actions and omissions in connection with the Services; (c) any inaccuracies on your Loan Application; (d) your authorization of a credit inquiry; and (e) our actions or omissions,**

**provided that they are taken/omitted in accordance with this Agreement or your instructions. This provision shall survive the termination of this Agreement.**

General Terms

*Events Beyond Control.* Under no circumstances shall SoLo be held liable for any delay or failure in the Platform and/or the Services and/or information on the Platform directly or indirectly resulting from, arising out of, relating to or in connection with events beyond the reasonable control of SoLo, including, without limitation, Internet failures, equipment failures, electrical power failures, strikes, labor disputes, riots, insurrections, civil disturbances, shortages of labor or materials, fires, floods, storms, earthquakes, explosions, acts of God, war, terrorism, intergalactic struggles, governmental actions, orders of courts, agencies or tribunals or non-performance of third parties. The provisions of this paragraph are in addition to, and not intended to limit or modify, the Limitation of Liability section as stipulated above.

*Governing Law.* This Agreement is governed by California law without regard to its conflicts of law rules, supersedes all prior agreements or understandings between you and us, and cannot be modified orally. You and we agree to submit to the personal jurisdiction of the state and federal courts located in Los Angeles County, California for any actions for which the parties seek to retain the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights, as set forth in the Section entitled "Resolution of Disputes by Arbitration" below.

*DISPUTE RESOLUTION.* IF YOU RESIDE IN THE UNITED STATES, UNLESS OTHERWISE SPECIFIED BY APPLICABLE LAW, YOU AGREE THAT ANY DISPUTE, CLAIM, OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY ALLEGED BREACH, TERMINATION, ENFORCEMENT, OR INTERPRETATION THEREOF, INCLUDING STATUTORY CONSUMER CLAIMS, OR TO THE USE OF THE SERVICE (TOGETHER, "**DISPUTES**") WILL BE SETTLED BY BINDING ARBITRATION, EXCEPT THAT EACH PARTY RETAINS THE RIGHT TO SEEK INJUNCTIVE OR OTHER EQUITABLE RELIEF IN A COURT OF COMPETENT JURISDICTION TO PREVENT THE ACTUAL OR THREATENED INFRINGEMENT, MISAPPROPRIATION, OR VIOLATION OF A PARTY'S COPYRIGHTS, TRADEMARKS, TRADE SECRETS, PATENTS, OR OTHER INTELLECTUAL PROPERTY RIGHTS. YOU ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PROCEEDING. UNLESS BOTH YOU PARTIES OTHERWISE AGREE IN WRITING, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF ANY CLASS OR REPRESENTATIVE PROCEEDING.

ANY SUCH ARBITRATION SHALL BE INITIATED AND HELD IN THE OFFICE OF THE AAA IN LOS ANGELES, CALIFORNIA. JUDGMENT ON THE ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

NOTE THAT THIS AGREEMENT TO ARBITRATE CONSTITUTES A TRANSACTION IN INTERSTATE COMMERCE RENDERING THE INTERPRETATION AND ENFORCEMENT OF THIS PROVISION SUBJECT TO THE FEDERAL ARBITRATION ACT. THIS ARBITRATION WILL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ( "**AAA**") UNDER THE COMMERCIAL ARBITRATION RULES AND THE SUPPLEMENTARY PROCEDURES FOR CONSUMER RELATED DISPUTES (THE "**AAA RULES**") THEN IN EFFECT, EXCEPT

AS MODIFIED BY THIS SECTION THE AAA RULES ARE AVAILABLE AT www.adr.org OR BY CALLING THE AAA AT 1-800-778-7879.

EACH PARTY SHALL BEAR ITS OWN COSTS AND FEES FOR EXPERTS AND ATTORNEYS. THIS EXCLUSIVE ARBITRATION REMEDY SHALL NOT BE AVAILABLE UNLESS INITIATED WITHIN ONE YEAR AFTER THE DISPUTE AROSE. THIS SECTION WILL SURVIVE ANY TERMINATION OF THIS AGREEMENT.

*Use of Affiliates.* We may use affiliates in the provision of the Services. Each affiliate shall be entitled to avail themselves of any and all rights and limitations set forth in these terms and conditions as if the affiliate were SoLo itself (e.g., indemnification and limitation of liability).

*Assignment.* You may not assign or transfer this Agreement, by operation of law, otherwise without prior written consent from us. Any attempt to assign or transfer without such consent will be null; however, we may assign or transfer this Agreement, at our sole discretion, without restriction.

*SoLo Credits*. Solo may, at its discretion, offer credits to its users that can be used for a future transaction in the event of a defaulted loan. Any such credits are non-transferrable and may not be withdrawn for cash value. Such credits may only be redeemed through our Platform. SoLo Credits do not expire for active members. Credits expire six months at 12:00 am Pacific Time from the date the member's account is voluntarily closed by the member or involuntarily closed in accordance with this Agreement.

*Third Party Beneficiary.*  This Agreement does not and is not intended to confer any rights or remedies upon any person other than the parties, including but not limited to any Lender.

*Waiver.* We may delay in enforcing any of our rights under this Agreement without forfeiture. Any waiver by use shall not be deemed a waiver of any other right or of the same right at another time.

*Change in Terms.* We may change the terms and conditions of this Agreement from time to time, at our sole discretion. We may add new terms or delete or amend existing terms, add new services, and discontinue existing services, or convert existing services into new services. We will give you reasonable notice in writing, if required by law, no later than 30 days before the effective date, or by any method permitted by law of an adverse change to this Agreement. Prior notice may not be given when not required by law or where an immediate change is necessary for security purposes. By continuing to use the Services after any such change, you agree to be bound by the changed terms and conditions of this Agreement as of the effective date of such changes.

*Entire Understanding.* Except as they may be supplemented by additional SoLo policies, guidelines, standards, or terms for a specific feature, service, or offering, this Agreement sets forth the entire understanding and agreement between you and us, whether written or oral, with respect to the subject matter addressed herein, and shall supersede any prior or contemporaneous understandings or agreements with respect to such subject matter.

*Severability.* If any of the provisions of this Agreement are, in whole or in part, determined to be void or invalid, the remainder of this Agreement shall remain in full force and effect.

Electronic Communications. When you use the Platform, or send e-mails, text messages, chats, and other communications from your desktop or mobile device to us, you may be communicating with us electronically. You consent to receive communications from us electronically, such as e-mails, texts, mobile push notices, chats, or notices and messages within the Platform and via direct electronic communications, and you can retain copies of these communications for your records. Please refer to our E-Sign Disclosure located here for more information about your consent to receive disclosures electronically.

*Privacy Policy.* SoLo reserves the right to maintain the confidentiality and privacy of all lenders and borrowers. Please see our Privacy Policy located <u>here</u> for information about how we collect, use, and disclose your information. Disclosed information may include, but is not limited to, your contact information, your identification, information about your use of the Services, information specific to your financial background, and other information relating to financial matters. The information may be disclosed to our affiliates, financial institutions, service providers, governmental or other regulatory agencies (including law enforcement officials within or outside of the United States) and direct marketers.

Last Updated: December 21, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEVEN CHECCHIA, individually and as a representative of the Class,, <br><br>        Plaintiff, <br><br>   v. <br><br> SOLO FUNDS, INC., <br><br>        Defendant. | Case No.: 2:23-cv-00444 |

---

**DECLARATION OF ALBERT WILDEMAN IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**

---

I, Albert Wildeman, pursuant to 28 U.S.C. § 1746, declare as follows:

1. This Declaration is made in connection with the matter of *Steven Checchia, individually and on behalf of all others similarly situated v. SoLo Funds, Inc.*

2. I am over 18 years of age and fully competent and authorized to make this Declaration. I am employed by SoLo Funds Inc. ("SoLo") as Vice President of Data & Analytics and maintain an office at 555 W. 5th Street, Floor 35, Los Angeles, California 90013. As Vice President of Data & Analytics, I work with, and am familiar with, SoLo's business records related to loan agreements and promissory notes executed by borrowers and related documents, including payment histories. All of the matters set forth below are based upon my review of records and documents regularly maintained in the ordinary course of business or within my personal knowledge, and, if called upon as a witness to testify, I would competently testify under penalty of perjury that these facts are, to the best of my knowledge, true and correct. I am authorized to provide this Declaration on SoLo's behalf, and I am submitting this Declaration in support of SoLo's Motion to Compel Arbitration and to Stay Proceedings in the above-captioned case.

1

3.  The records I have reviewed are maintained by SoLo in the normal course of their business and were made at or near the time of the events, conditions, or occurrences they describe.

4.  It is the regular and routine practice and habit of SoLo's business activity to make, prepare, keep, and maintain records regarding loans, and I have reviewed those records to derive my knowledge herein.

5.  SoLo provides an online platform that connects third-parties seeking to borrow money (called "Borrowers") with third-parties offering to lend money (called "Lenders"). The platform is accessible online at http://www.solofunds.com and via mobile applications ("SoLo's Platform").

6.  SoLo's records indicate that Borrower Steven Checchia ("Checchia") created his SoLo account (the "Checchia Account") on February 26, 2022.

7.  Since the creation of the Checchia Account, Checchia has contracted for nineteen (19) individual loans through SoLo's Platform for a combined total amount of $6,175 (the "Loans"):

   a)  On February 28, 2022, a loan in the amount of $100 was funded by a Lender. Checchia paid back the loan on March 11, 2022.

   b)  On March 26, 2022, a loan in the amount of $150 was funded by a Lender. Checchia paid back the loan on April 8, 2022.

   c)  On April 10, 2022, a loan in the amount of $50 was funded by a Lender. Checchia paid back the loan on April 22, 2022.

   d)  On April 23, 2022, a loan in the amount of $225 was funded by a Lender. Checchia paid back the loan on May 6, 2022.

   e)  On May 7, 2022, a loan in the amount of $300 was funded by a Lender. Checchia paid back the loan on May 20, 2022.

f)  On May 21, 2022, a loan in the amount of $375 was funded by a Lender. Checchia paid back the loan on June 3, 2022.

g)  On June 4, 2022, a loan in the amount of $400 was funded by a Lender. Checchia paid back the loan on June 17, 2022.

h)  On June 18, 2022, a loan in the amount of $200 was funded by a Lender. Checchia paid back the loan on July 1, 2022.

i)  On July 1, 2022, a loan in the amount of $500 was funded by a Lender. Checchia paid back the loan on July 15, 2022.

j)  On July 21, 2022, a loan in the amount of $325 was funded by a Lender. Checchia paid back the loan on July 29, 2022.

k)  On July 29, 2022, a loan in the amount of $500 was funded by a Lender. Checchia paid back the loan on August 12, 2022.

l)  On August 17, 2022, a loan in the amount of $450 was funded by a Lender. Checchia paid back the loan on August 26, 2022.

m)  On August 31, 2022, a loan in the amount of $325 was funded by a Lender. Checchia paid back the loan on September 9, 2022.

n)  On September 9, 2022, a loan in the amount of $350 was funded by a Lender. Checchia paid back the loan on September 23, 2022.

o)  On September 23, 2022, a loan in the amount of $500 was funded by a Lender. Checchia paid back the loan on October 7, 2022.

p)  On October 7, 2022, a loan in the amount of $425 was funded by a Lender. Checchia paid back the loan on October 21, 2022.

q) On October 21, 2022, a loan in the amount of $450 was funded by a Lender. Checchia paid back the loan on November 18, 2022.

r) On November 22, 2022, a loan in the amount of $200 was funded by a Lender. Checchia paid back the loan on December 16, 2022.

s) On December 30, 2022, a loan in the amount of $350 was funded by a Lender. Checchia has not paid back the loan.

Copies of each Loan Agreement and Promissory Note for each of the nineteen Loans are attached as composite Exhibit "A".

8.     Each of the nineteen Loan Agreement and Promissory Notes executed by Checchia references the SoLo Terms and Conditions in the section titled "Default."

9.     At no time did Checchia revoke his consent to the Terms and Conditions or otherwise indicate he did not agree to be bound by the Terms and Conditions.

10.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 7, 2023

_____
Albert Wildeman
Vice President of Data & Analytics

# EXHIBIT A

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████████ ], (the **"Borrower"**), promises to pay, as herein provided, [Michael R. (███████████████████████ )] (**"Lender"**), for the personal loan in the amount of [$100.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [03/11/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 02/28/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Lonnie I. (███████████████████] (**"Lender"**), for the personal loan in the amount of [$150.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [04/08/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 03/26/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Emily C. (████████████████████] (**"Lender"**), for the personal loan in the amount of [$50.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [04/15/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 04/10/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Eric T. (███████████████████████)] (**"Lender"**), for the personal loan in the amount of [$225.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [05/06/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 04/23/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ██████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Robert S. ██████████████████] ("**Lender"**), for the personal loan in the amount of [$300.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [05/20/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 05/07/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████████████ ], (the **"Borrower"**), promises to pay, as herein provided, [Frederick T. (███████████████████████ )] (**"Lender"**), for the personal loan in the amount of [$375.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [06/03/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 05/20/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ████████████████ ], (the **"Borrower"**), promises to pay, as herein provided, [Cody G. (████████████████ ] (**"Lender"**), for the personal loan in the amount of [$400.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [06/17/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 06/04/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ██████████████████ ], (the **"Borrower"**), promises to pay, as herein provided, [Frederick T. (██████████████████ )] (**"Lender"**), for the personal loan in the amount of [$200.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [07/01/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my **Loan**, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 06/18/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████ ], (the **"Borrower"**), promises to pay, as herein provided, [Lindi M. (███████████████████ )] (**"Lender"**), for the personal loan in the amount of [$500.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [07/15/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 07/01/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████████████ ], (the **"Borrower"**), promises to pay, as herein provided, [Lincoln S. (███████████████████████] (**"Lender"**), for the personal loan in the amount of [$325.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [07/29/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 07/21/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ██████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Patricia L. (██████████████████████] (**"Lender"**), for the personal loan in the amount of [$500.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [08/12/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 07/29/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Matthew L. (███████████████████] ("**Lender"**), for the personal loan in the amount of [$450.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [08/26/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 08/17/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Samuel L. (████████████████████] (**"Lender"**), for the personal loan in the amount of [$325.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [09/09/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 08/31/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Matthew H. (███████████████████████)] (**"Lender"**), for the personal loan in the amount of [$350.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [09/23/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 09/09/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮], (the **"Borrower"**), promises to pay, as herein provided, [Cody G. (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮] (**"Lender"**), for the personal loan in the amount of [$500.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [10/07/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 09/23/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ██████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Levi H. (██████████████████████] (**"Lender"**), for the personal loan in the amount of [$425.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [10/21/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 10/07/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Brent H. (███████████████████████████████) ] (**"Lender"**), for the personal loan in the amount of [$450.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [11/04/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 10/21/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Samuel L. (████████████████████] (**"Lender"**), for the personal loan in the amount of [$200.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [12/02/2022] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my Loan, and which sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 11/22/2022 ].

# Loan Agreement and Promissory Note

FOR VALUE RECEIVED, [Steven C. ███████████████████████], (the **"Borrower"**), promises to pay, as herein provided, [Robert S. ███████████████████] (**"Lender"**), for the personal loan in the amount of [$350.00],(the **"Loan"**), as originated through the mobile application at http://www.solofunds.com/ (the **"Platform"**) maintained by SoLo Funds, Inc. (**"SoLo"**) and in accordance with the terms set forth below.

This Loan Agreement and Promissory Note (together, the **"Note"**) may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by Lender. The non-exercise by Lender of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance.

# BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR CONSENT TO THESE TERMS.

*Payment.* The Loan, meaning the principal sum borrowed together with all other charges, costs and expenses, is due and payable in full on or before [01/13/2023] (the **"Repayment Date"**)(such period, the **"Term"**).

*Prepayment.* Any part of the principal balance of the Loan may be prepaid at any time without penalty.

*Interest.* This Note bears no interest for the term of the Loan until paid in full, [0%] per annum.

*Loan Consummation.* The Borrower is not obligated under the terms of this Note and the loan transaction is not consummated until the Borrower's ability to cancel the loan application has expired. The Borrower may cancel the Note at any time before 11:59 pm EST of the third day after the Loan is funded by contacting the Lender's service provider at support@solofunds.com. If the Borrower exercises this cancellation right, all loan proceeds will be withdrawn from the Borrower's account at Evolve Bank within the following 5-7 business days. If the full amount cannot be withdrawn the account, Borrower will be responsible for any returned payment fees, late fees, administrative fees, and full repayment of the Loan.

*Platform Donation.* For avoidance of doubt, any donation the Borrower chooses to make to the Platform is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Lender Tips.* For avoidance of doubt, any tip the Borrower chooses to make to the Lender is purely voluntary and shall not be construed to be a requirement under this Note or a condition of the Loan.

*Returned Payment Fee.* If payment is returned or fails due to insufficient funds in the designated account or otherwise cannot be processed, Borrower acknowledges and agrees to pay a Returned Payment Fee of fifteen dollars ($15.00), to the extent permitted by applicable law.

*Late Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Late Fee of 10% of the principal loan amount shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Synapse Transaction Fee.* If any portion of the Loan is not repaid before 35 days after the funding date, a Synapse Transaction Fee of 2 times (0.9% of the principal loan + $0.70) for the funding and repayment transaction costs applied by the payment provider (Synapse) shall be due and payable by the Borrower, to the extent permitted by applicable law.

*Borrower Collection Costs.* Borrower agrees to pay all costs and expenses, if any, in connection with the collection of any amounts due under this Loan Agreement or its enforcement (whether through negotiations,

legal proceedings or otherwise), including, without limitation, reasonable attorneys' fees and court costs.

*Other Charges.* If any law or regulation which applies to my **Loan, and which** sets maximum charges for such Loan, is finally interpreted so that any other charges collected or to be collected in connection with the Loan exceeds the permitted limit, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower, which exceeded permitted limit, will be refunded.

*Payment Methods.* You will repay the Loan in a single installment using ACH transfer/Debit Card, the payment method available on the Platform.

*Default.* Borrower may be deemed in default (each, an **"Event of Default"**) of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the Loan; (2) files or has instituted against it any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with the Loan; or (4) fails to abide by the terms of this Note or the SoLo Terms and Conditions. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts due and outstanding on this Note.

*Heirs; Executors.* The obligations under this Note shall be binding upon Borrower's heirs, executors, and administrators.

*Transfer of Agreement and Discharge of Liability.* Borrower may not assign or otherwise transfer any of my obligations or rights under this Note without Lender's prior written consent. Lender may, to the extent permitted by law, transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to Lender with respect to this Note; and Lender will then be forever relieved and fully discharged from any liability or responsibility in the matter.

*Covered Borrowers under the Military Lending Act.* Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Nothing in this Agreement shall be construed as applying to a covered borrower or their dependents to the extent inconsistent with the Military Lending Act. To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, covered borrowers may call the following toll-free phone number: 1-855-912-0415.

*Severability.* Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

*Entire Agreement.* This Agreement constitutes the entire and final agreement concerning the Loan and supersedes any other communication with you regarding the Loan.

IN WITNESS WHEREOF, the undersigned has executed this Note as of [ 12/30/2022 ].