## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAN GOLUBIEWSKI and STEVEN CHECCHIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVE INC.,<br><br>Defendant. | No.: 3:22-CV-02077-MEM<br><br>Hon. Malachy E. Mannion |

## REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS PROCEEDINGS

Daniel T. Brier
Richard L. Armezzani
**MYERS, BRIER & KELLY, LLP**
425 Biden Street, Suite 200
Scranton, PA  18503

Edward D. Totino (*Pro Hac Vice*)
Benjamin W. Turner (*Pro Hac Vice*)
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, CA  90067

*Attorneys for Defendant, DAVE INC.*

## <u>TABLE OF CONTENTS</u>

I.    SUMMARY OF ARGUMENT ........................................................................1

II.    ARGUMENT ..............................................................................................4

    A.    Plaintiffs' "Counter-Statement of Facts" Makes Critical Admissions...4

    B.    Plaintiffs Do Not Dispute They Had Actual Notice . ..........................5

    C.    Plaintiffs Had Inquiry Notice ...............................................................7

    D.    The Full Context of the Transaction Also Makes Clear That Plaintiffs Were on Inquiry Notice ......................................................12

    E.    Plaintiffs' Challenges to Dave's Evidence Are Unpersuasive and Irrelevant............................................................................................12

    F.    Plaintiffs Agreed To Arbitrate Their Claims on an Individual Basis With Dave..............................................................................15

    G.    Checchia Agreed To Arbitrate in Two Additional Agreements .........16

III.    CONCLUSION........................................................................................21

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986)................................................7

*B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931 (2022) ....................................9, 12

*Dobbs v. Health IQ Ins. Servs., Inc.*,
  No. 21-5276, 2022 WL 2974713 (E.D. Pa. July 27, 2022) ..................................5

*Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825 (S.D.N.Y. 2020)...............................9

*Gordon v. Kohl's Dep't Stores, Inc.*, 2017 WL 3390269 (E.D. Pa. Aug. 7,
  2017) ................................................................................................................6, 7

*Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764 (3d Cir. 2013) ..........6, 7

*Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373 (2016)...............................5

*Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393 (9th Cir. 2020)................................8

*Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154 (3d Cir. 2011) ..............................19

*Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017)................................9

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ..........................5, 9

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) ...........................8

*Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580 (N.D. Cal. 2020) ............................9

*Selden v. Airbnb, Inc.*, 4 F.4th 148 (D.C. Cir. 2021) ..............................................10

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021)........................................12

*Simeone v. Simeone* 581 A.2d 162 (Pa. 1990)...........................................................5

*United Refining Co. v. Jenkins*, 189 A.2d 574 (Pa. 1963).......................................19

*White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017) ............................................... 19

## STATUTES

9 U.S.C. § 4 ...................................................................................................3, 4

Fed. R. Civ. Proc. 12(b)(6) ..........................................................................6

Fed. R. Civ. Proc. 56 ....................................................................................6

## I.      SUMMARY OF ARGUMENT

Resolution of Dave's motion is simple and turns on a single fact: Plaintiffs do not dispute that they entered into agreements with Dave. That alone requires this Court to compel arbitration. While Plaintiffs assert that they did not know those agreements contained arbitration clauses, that is irrelevant. Parties are bound by the agreements into which they enter, regardless of whether they read the terms.

Plaintiffs cannot plausibly deny they entered into agreements with Dave, and do not even attempt to make such an argument. Nor could they. Plaintiffs actively sought out, downloaded, and installed the Dave App on their mobile phones. They then created accounts with Dave, gave Dave their personal information and linked their bank accounts, and allowed Dave to delve into transaction-level details of their personal finances. Then, over the course of several years, Plaintiffs received dozens of Advances from Dave, repaid most of those Advances, tipped Dave, and paid fees to expedite delivery of Advances. Undoubtedly, Plaintiffs also have downloaded and used many other mobile applications and are clearly aware that applications like Dave's—which require the user to create accounts, provide their personal information, link their bank accounts, and offer ongoing financial technology services—are always subject to terms of use.

The analysis of whether a contract was formed is determined from the viewpoint of a reasonably prudent smartphone user—not someone who has never

picked up a phone before. Plaintiffs do not dispute they are reasonably prudent smartphone users. Nor could they, as they have been using the Dave App for years and have filed repeated actions seeking to evade all manner of online arbitration agreements. *See* Request for Judicial Notice Exs. 1-3. Accordingly, they cannot seriously dispute that they were aware they had entered into contracts with Dave governing Advances.

Plaintiffs' Opposition also fails to rebut actual and constructive notice of the Terms. For actual notice, Plaintiffs argue they do not "recall" agreeing to the Terms. That statement is consistent with, and does not attempt to controvert, the evidence and argument proffered by Dave that Plaintiffs had actual notice.

Plaintiffs' arguments on inquiry notice also fail. Plaintiffs criticize inconsequential design elements of Dave's sign-up screen, such as the particular font color used and that the advisory that they would be agreeing to the Terms was placed below rather than above the "Join Dave" button. These arguments about aesthetic design decisions ignore the central question: would a reasonably prudent mobile phone user have seen the advisory that, by joining Dave, they were assenting to the Terms? Based on Dave's simple, uncluttered sign-up screen, the answer to that question unequivocally is "Yes." Plaintiffs also ignore that, in determining inquiry notice, courts consider the full context of the transaction including—as is the case here—whether the consumer enters into a forward-looking, long-term relationship

with the company.

Plaintiffs fare no better with their remaining arguments. Plaintiffs first take issue with the versions of the sign-up screens and Terms that Dave submitted and quibble with the word choice of Dave's declarant. These arguments are irrelevant and do not alter the dispositive, undisputed fact that Dave has always required users to agree to the Terms before completing the sign-up process. At best, such arguments would only go to the weight of the evidence, which would require a trial under 9 U.S.C. § 4 before the Court could issue a decision.

Plaintiffs also make strained arguments about the language of two other agreements into which Checchia entered with Dave as part of the sign-up process for Dave's ExtraCash service. Plaintiffs twist that contract language out of context to argue that Dave is an unaffiliated third-party to agreements governing the use of Dave's ExtraCash service—agreements that are linked on the Dave App and Dave website and are entitled "**Dave** Spending Account Deposit Agreement and Disclosures" and "**Dave** Extra Cash Account Deposit Agreement and Disclosures" (emphasis added). The plain language of the agreements allows Dave to compel arbitration. The agreements also repeatedly refer to obligations between Dave and users, and explicitly incorporate the Terms. In addition, Dave is a "service provider" under those agreements for Evolve Bank & Trust ("Evolve") for the ExtraCash account Checchia opened. In any event, Plaintiffs' arguments about the scope of

3

these agreements must, pursuant to the agreements' delegation clauses, be presented to the arbitrator, not this Court.

The Court should compel Plaintiffs to arbitrate their claims and their arguments about the scope of the arbitration clauses. In the alternative, if the Court concludes there are triable issues of fact with respect to whether Plaintiffs assented to agreements containing arbitration agreements with Dave, the Court must conduct a trial pursuant to 9 U.S.C. § 4.

## II.    ARGUMENT

### A.    Plaintiffs' "Counter-Statement of Facts" Makes Critical Admissions.

Plaintiffs do not dispute that they: (1) searched for, downloaded, and installed the Dave App; (2) created accounts with Dave using the Dave App; (3) provided Dave with their personal information to create those accounts and linked their bank accounts; (4) received dozens of Advances, tipped Dave dozens of times, and paid Dave fees for expedited delivery of Advances over the course of multi-year customer relationships; (6) are reasonably-prudent smartphone users who have used the Dave App for years and have downloaded and used multiple other applications; (7) knew, as reasonably prudent smartphone users, that "TOS" referred to the Terms governing the Dave App; or that Checchia (8) signed up for an additional Dave service, ExtraCash, that required him to check a box confirming that he agreed to two additional agreements containing arbitration provisions.

In light of these undisputed facts, Plaintiffs do not and cannot dispute that they knew they had entered into agreements with Dave. Rather, the crux of their Opposition is their claim that they did not know their agreements required arbitration. Plaintiffs, however, are bound to the agreements into which they entered, regardless of whether they read them. *See Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990) ("Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood . . . ."); *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 383 (2016).

## B.   Plaintiffs Do Not Dispute They Had Actual Notice.

"In the context of an electronic consumer transaction, the occurrence of mutual assent ordinarily turns on whether the consumer had reasonable notice of the merchant's terms of service agreement." *Dobbs v. Health IQ Ins. Servs., Inc.*, No. CV 21-5276, 2022 WL 2974713, at *3 (E.D. Pa. July 27, 2022) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). Notice of the terms can be actual or constructive, and the latter "turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177.[1]

Plaintiffs argue that Dave "does not claim, or present evidence to prove"

---

[1]  Plaintiffs agree that there is no conflict between California and Pennsylvania law. *See* Opp. at 5 n.3.

actual notice. Opp. at 9 n.7. To the contrary, Dave presents this argument and the undisputed evidence in support of it on pages 12 and 13 of its moving papers.

Plaintiffs themselves do not dispute actual notice. Nor could they, in light of the undisputed facts identified above in Section II.A and set forth in Dave's opening brief. Instead, Plaintiffs submitted declarations merely stating that they do not "recall" agreeing to be bound to these agreements, which establishes nothing and does not even create a factual dispute. *See Gordon v. Kohl's Dep't Stores, Inc.*, 2017 WL 3390269, at *9 (E.D. Pa. Aug. 7, 2017) ("Although Plaintiffs do not recall the specifics of their enrollment . . . , Plaintiffs have not presented any evidence to rebut Defendants' account of the KAE enrollment process . . . , thus . . . there is no genuine factual dispute about this issue.").

A motion to compel arbitration may be analyzed under two standards: Rule 12(b)(6) or Rule 56. *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 773-76 (3d Cir. 2013). The 12(b)(6) standard applies "[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)." *Id*. at 773-74 (internal quotations omitted). Here, arbitrability is apparent on the face of the documents relied upon in the complaint because: (1) Plaintiffs do not dispute that the Terms contain an arbitration clause; and (2) Plaintiffs do not dispute that they actually knew they entered into an agreement with Dave. Therefore, the 12(b)(6) standard applies, and mandates that

6

the Court compel arbitration.

Insofar as Plaintiffs attempt to create a triable issue on actual notice, Plaintiffs' uncertainty and inability to "recall" are insufficient. *See Gordon*, 2017 WL 3390269, at *9; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."). Such statements are nothing "more than a naked assertion." *Guidotti*, 716 F.3d at 774. Nor do such statements take a position or put into dispute Dave's arguments and evidence on actual notice.

In any event, no reasonable trier of fact could find Plaintiffs lacked actual notice. Plaintiffs do not deny actual notice, and any such denial would lack credibility in light of Plaintiffs' experience with mobile apps and the nature of their customer relationship with Dave.

Accordingly, the Court should rule that, given Plaintiffs' inability to dispute actual notice, Plaintiffs agreed to arbitrate their claims. In the alternative, if the Court cannot make that ruling on the papers, then there is a triable issue of fact as to actual notice, and the Court must conduct a trial.

## C.    Plaintiffs Had Inquiry Notice.

The "Join Dave" sign-up screen explicitly stated that by joining Dave, Plaintiffs agreed to the terms. The App therefore provided "'explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *See*

*Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020). In disputing constructive notice, Plaintiffs focus on inconsequential design elements of the sign-up screen: that the explicit notice was placed below rather than above the "Join Dave" button; that the notice was in grey font against a white background rather than in some other color; and that unidentified "users" (not Plaintiffs) would not have understood "<u>TOS</u>" to be a hyperlink to the Terms. None of these points have any relevance because the reasonably conspicuous notice standard does not require sign-up screens to use a particular color or font scheme, or that the advisory be placed above rather than below the button manifesting assent.

Instead, the reasonably conspicuous notice standard is satisfied if the advisory is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514 (9th Cir. 2023). The Dave App's uncluttered sign-up screen does so. The sign-up screen contained just three elements: an illustrated teddy bear with a speech bubble, a prompt to enter a mobile phone number, and the "Join Dave" button with the advisory directly below (in same field of vision) stating: "By joining, I agree to Dave's . . . <u>TOS</u> . . . ."

The placement of the advisory meant the Terms link was within the user's field of vision when they moved their finger to physically press the "Join Dave" button. The Terms link could not have been ignored or missed. Nor was it "buried

at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it." *Nguyen*, 763 F.3d at 1177.

Further, Dave's notice that joining binds the user appears in a grey font, in contrast to the other design elements: the white background, the green "Join Dave" button and the black text of the speech bubble above the illustrated bear. This color scheme enhanced the constructive notice. *See Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) ("the grey and black color contrast against the white background and are clear to the reasonably prudent user creating an account"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) ("Despite Plaintiff's characterization of the font as gray-on-gray, the text contrasts clearly with the background and is plainly readable.").

Also, the font size of the advisory was nearly the same size as the "COSTS $1/MONTH" in the "Join Dave" button and the black text in the speech bubble. Accordingly, the advisory and Terms link were appropriately sized relative to the rest of the sign-up page. This is particularly true in the context of a mobile device sign-up screen that, unlike a website, contains virtually no other text or design elements. *See Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (holding term was binding where it was readable and reasonably conspicuous, even though it was "in a small font"). The design elements and font size were also far more conspicuous than the sign-up screen enforced in *B.D. v. Blizzard Ent., Inc.*, 76 Cal.

App. 5th 931 (2022), where the advisory was buried below a wall of small text on a computer monitor:



*Id.* at 935.

The design elements are also cleaner than those in *Selden v. Airbnb, Inc.*, 4 F.4th 148 (D.C. Cir. 2021), in which the D.C. Circuit, applying California law, enforced a similar sign-up screen in AirBnB's mobile application:



*Id.* at 152.

Plaintiffs take issue with the sign-up screen using "<u>TOS</u>" as the hyperlink to the Terms, asserting "users" would not understand this was a hyperlink to the Terms. But Plaintiffs do not dispute that they—or any other reasonably prudent smartphone user—understood "TOS" to refer to the Terms, that underlined words were links, or that pressing "<u>TOS</u>" would have displayed Terms (and its arbitration clause) in full.

11

**D.    The Full Context of the Transaction Also Makes Clear That Plaintiffs Were on Inquiry Notice.**

Plaintiffs' opposition fails to address "the full context of [the] transaction," which is "critical to determining whether any particular notice is sufficient to put a consumer on inquiry notice of contractual terms contained on a separate, hyperlinked page." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 477 (2021).

The full context of Plaintiffs' transactions evidences a far deeper, ongoing relationship than even that at issue in *Blizzard*. In *Blizzard*, the California Court of Appeal enforced a sign-up wrap agreement against a minor who was playing a videogame and had purchased virtual items for $10. *Blizzard*, 76 Cal. App. 5th at 936.

By contrast, Plaintiffs searched for and downloaded Dave, a financial technology app, to their mobile phone, signed up for a monthly subscription, linked their bank accounts to the app, gave Dave extensive access to their transaction history, and then repeatedly—over the course of several years—requested and repaid Advances, paid expedited delivery fees, and tipped Dave. Checchia even signed up for yet another Dave service.

**E.    Plaintiffs' Challenges to Dave's Evidence Are Unpersuasive and Irrelevant.**

Plaintiffs argue that Dave fails to show the exact sign-up screens Plaintiffs saw when they created their accounts, or the version of the Terms in place when they

12

signed up. None of these arguments have any merit or relevance.

Checchia created an account with Dave on November 4, 2017. Golubiewski created an account with Dave on June 13, 2019. Both created their accounts using the Dave App. While Dave did not produce a screenshot of the sign-up screen from 2017, Dave submitted a declaration from Ashley Hernandez, its Director of Member Success, who has been with Dave since June of 2017. In her declaration, Ms. Hernandez explains how the Dave App's sign-up screen, while changing slightly in appearance over time, always had the same essential design interface, including in 2017 and in 2019. *See* Hernandez Decl. ¶¶ 8, 19-23. That is, to become a Dave member and access its services, consumers had to agree to the Terms through the Dave App. *Id.* And again, Plaintiffs submit no evidence—even in the form of their own declaration testimony—controverting those statements.

Even though Ms. Hernandez's uncontroverted testimony as to the Dave App in 2017 suffices, Checchia also agreed to two separate agreements containing arbitration clauses when he signed up in 2022—using the Dave App—for Dave's new ExtraCash feature.[2] Plaintiffs argue that Ms. Hernandez does not explicitly state that the sign-up screen for ExtraCash attached to her declaration is the screen Checchia saw. But Ms. Hernandez states that this is the screen "shown to users on

---

[2]  Plaintiffs' arguments that Dave is not a party to these agreements is addressed below in Section II.G.

the Dave App who choose to sign up for Dave's ExtraCash service" (Hernandez Decl. ¶ 32), and it is undisputed that Checchia signed up for the ExtraCash service.

Plaintiffs argue that Ms. Hernandez does not specifically testify that the 2019 screenshots show the screen Golubiewski saw on June 13, 2019. This is irrelevant.[3] As Ms. Hernandez testified, while "the look and feel of the Dave App and website have changed slightly over time," the interface always required agreement to the Terms to proceed. Hernandez Decl. ¶¶ 25-27. Plaintiffs do not argue that the Dave App sign-up screen changed radically since 2019, such that the 2019 screenshot does not accurately capture what Golubiewski saw. Nor is there any reason to draw such a conclusion, particularly in light of Ms. Hernandez's uncontroverted testimony that the Dave App's sign-up screen *always* had the same basic design interface requiring assent to its Terms.

Additionally, the screenshots Dave introduced into evidence of the sign-up screen in 2019 and 2020, while having slight aesthetic variations, maintain the same critical design elements: a simple, crisp interface, and an advisory explicitly warning

---

[3] Plaintiffs argue that the district court in *Lopez v. Dave*, Case No. 3:22-cv-04160-VC (N.D. Cal.), faulted Dave for not stating that the screenshot it submitted with its motion to compel was the precise sign-up screen viewed by the plaintiff. *Lopez* is on appeal before the Ninth Circuit and is not persuasive authority. In any event, the court did not deny Dave's motion because Dave did not submit the precise screenshot of the sign-up screen viewed by plaintiff. Instead, the court evaluated whether—based on the screenshot submitted by Dave—the plaintiff in that case had reasonably conspicuous notice that she was assenting to the Terms.

14

customers that pressing the button to continue the sign-up process would manifest assent to the Terms, in close visual proximity to the button. At best, Plaintiffs' arguments with respect to Dave's evidence—if not entirely irrelevant—go to weight, and would require a trial to resolve.

Plaintiffs also fault Dave for submitting the version of the Terms in place on November 2, 2017, two days before Checchia created his account, and for submitting a version of the Terms from May 17, 2019, two weeks before Golubiewski created his account. Opp. at 12. Plaintiffs further complain that these versions of the Terms were obtained from a digital archive of Dave's website, rather than the App. *Id.*

These arguments fail. Ms. Hernandez's declaration submitted four different versions of the Terms governing the Dave App, from November 2, 2017 to the Terms in effect when she executed her declaration on March 17, 2023. *See* Hernandez Decl. Exs. A, C, D, E. Every version contains substantively identical arbitration clauses and a provision that Dave reserves the right to amend the Terms. *See id.*; Dkt. 13-1 at 16, 28; Dkt. 13-1 at 40, 44; Dkt. 13-1 at 46, 52, Dkt. 13-1 at 58, 61. All that matters is that Dave's current version of the Terms contains an arbitration clause, which it does. *See* Hernandez Decl. Ex. A (Dkt. 13-1 at 28).

   **F.    Plaintiffs Agreed To Arbitrate Their Claims on an Individual Basis With Dave.**

Plaintiffs argue that the Terms "did not fairly convey to an ordinary person that arbitration would be the required method of dispute resolution." Opp. at 13-14.

15

The basis for this argument is that ***prior*** versions of the Terms require users to notify Dave in writing of "any claim or dispute . . . before bringing any legal action, either individually, as a class member or representative, or as a private attorney general, against Dave." *Id.* Plaintiffs contend this language creates an "irreconcilable conflict" with the arbitration agreement.

At the outset, the arbitration provision expressly delegates gateway issues to the arbitrator, and thus Plaintiffs' argument as to how to interpret this language must be presented to the arbitrator. What's more, this language is not contained in Dave's current Terms, so it is irrelevant. Finally, there is no "conflict." For one, an arbitration is a "legal action." For another, the Arbitration Agreement covers arbitrable claims. The prior version of the Terms containing this notification language could have contemplated the possibility of non-arbitrable claims and/or that notice to Dave was important, even if users were improperly attempting to assert arbitrable claims on a class basis.

### G.     Checchia Agreed To Arbitrate in Two Additional Agreements.

On November 6, 2022, Checchia began taking Advances using Dave's new ExtraCash feature. Hernandez Decl. ¶ 31. As a result, Checchia also agreed to arbitration under Dave's Deposit Account Agreement and Dave's ExtraCash Account Agreement. Plaintiffs argue that Checchia executed these agreements with Evolve and not Dave, and therefore Dave cannot compel arbitration under them.

That argument is without merit.

First, this Court cannot address the argument. The agreements' delegation clauses require the arbitrator to resolve "any disagreements about the meaning, application or enforceability of this Arbitration Provision." *See* Herndandez Decl. Ex. H (Dkt 13-1 at 97); *id.* Ex. J (Dkt. 13-1 at 154).

Second, this argument fails even if the Court were to address it. Checchia signed up for the Deposit Account and ExtraCash Agreements using the Dave App. The agreements contain "Dave" in their titles: "Dave Extra Cash Account Deposit Agreement and Disclosures" and "Dave Spending Account Deposit Agreement and Disclosures." The full language of the agreements is set forth on Dave's website and in hyperlinks on the Dave App. These agreements cover the ExtraCash services Dave provides, through the Dave App. The agreements explicitly incorporate the Terms. Dkt. 13-1 at 74, 109. The agreements also repeatedly refer to obligations between Dave and users. *See, e.g.,* Dkt. 13-1 at 75-78. Dave is not a third party to its own agreements.

The plain language of the agreements also makes clear that Dave may enforce the arbitration clauses. The agreements state that the services are provided "in partnership with Dave Inc.," which is "the program partner" and "financial technology company" "responsible for managing" the Extra Cash Account, Dave Spending Account, and Dave Card programs. Hernandez Decl. Ex. H (Dkt. No. 13-

1 at 74); Ex. J (Dkt. No. 13-1 at 134). The agreements further state that: "When you see the words 'we,' 'us,' or 'our' in this Agreement, it refers to Evolve, as well as any of its affiliates, successors, assignees, agents or service providers." Dave is a party to these agreements, but even if it were not, Dave clearly is—for purposes of these agreements—a service provider for the account.

The arbitration clause in both agreements expressly contemplate that users must arbitrate disputes with Dave, stating: "If you have a dispute with us ***or Dave***, and we are not able to resolve the dispute informally, you and we agree that upon demand by either you or us, the dispute will be resolved through the arbitration process as set forth in this section. For purposes of this Arbitration Provision, a 'claim' or 'dispute' is any unresolved disagreement between you, us and/***or Dave***, arising from or relating in any way to the Extra Cash Account or this Agreement." Dkt. 13-1 at 97, 154. The arbitration agreements further state that, "As solely used in this Arbitration Provision, 'we' or 'us' ***shall include*** Evolve, its affiliates and their successors, employees, directors, officers and agents." *Id.*

This "shall include" language does not limit "we" or "us" to only Evolve and its affiliates. The purpose of the arbitration clause is to require arbitration of any "dispute with us or Dave." Dave is a "service provider" under the agreements. Any dispute over the ExtraCash service provided for by the Dave App would necessarily be with Dave. Accordingly, the only logical way to read the arbitration clause is that

18

Dave has the right to compel arbitration.

Plaintiffs' strained reading of the agreements not only ignores the plain language of the agreements, it ignores the clear purpose of the arbitration clauses and would lead to absurd results. Given the "or Dave" language, the agreements plainly intended to confer to Dave the right to compel arbitration. If Dave did not have the right to compel arbitration, the "or Dave" language would be superfluous. *See Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 167 (3d Cir. 2011) ("[T]his Court takes care not to render other portions of a provision or contract superfluous when construing contract language.").

Further, the entire arbitration agreement would be nonsensical. Users interact with ExtraCash only through the Dave App and thus most disputes a user might have would be with Dave, not Evolve. But under Plaintiffs' reading of the agreements, Dave could never compel such disputes to arbitration, while either Evolve or users could compel arbitration of disputes that were exclusively between the user and ***Dave***. Such an interpretation makes no sense and leads to an absurd outcome. Pennsylvania courts will not enforce the plain language of a contract when it would produce an absurd result. *United Refining Co. v. Jenkins*, 189 A.2d 574 (Pa. 1963).

Plaintiffs' reliance on *White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017), is inapposite. The arbitration agreement in *White* limited its definition of "we" and "us" to Citibank and did not provide "affiliates," "agents," or "service providers" the right

to compel arbitration. *Id*. at 267-68. Further, the arbitration agreement in *White* did not contain language analogous to "or Dave" that specifically identified a party that, if the consumer had a dispute with, had to arbitrate his or her claims.

Plaintiffs argue that Dave waived "nonsignatory enforcement" arguments. Opp. at 16 n.16. This is wrong. Dave is a party to these agreements, which include Dave in their titles, are hosted on the Dave App and website, and govern use of Dave's ExtraCash service. The preamble to both agreements explain that they govern the terms of a non-interest bearing demand deposit account "made available to eligible consumers by Evolve . . . in partnership with Dave." Dkt. 13-1 at 74, 109. The agreements explicitly incorporate the Terms (*id.*) and repeatedly refer to obligations between the user and Dave. *See, e.g.,* Dkt. 13-1 at 75-78. Further, the arbitration agreements explicitly require arbitration of claims "with . . . Dave," which Dave explained in its moving papers. *See* Mot. at 5. Dave is also a "service provider" under the agreements, an indisputable fact made plain in the agreements' preamble, which Dave included in its moving papers. There is no "prejudice" warranting waiver of these arguments, which in any event must be presented to the arbitrator, not the Court.

III.   **CONCLUSION**

The Court should compel arbitration of Plaintiffs' claims and stay this action.

Alternatively, the Court should conduct a jury trial on the issues relating to whether

Plaintiffs entered into agreements to arbitrate.

Dated:  May 10, 2023                    Respectfully submitted,

                                        /s/ Daniel T. Brier
                                        Daniel T. Brier
                                        dbrier@mbklaw.com
                                        Richard L. Armezzani
                                        rarmezzani@mbklaw.com
                                        **MYERS, BRIER & KELLY, LLP**
                                        425 Biden Street, Suite 200
                                        Scranton, PA  18503
                                        (570) 342-6100

                                        Edward D. Totino (Pro Hac Vice)
                                        Edward.totino@bakermckenzie.com
                                        Benjamin W. Turner (SBN 256092)
                                        Ben.turner@bakermckenzie.com
                                        **BAKER & McKENZIE LLP**
                                        10250 Constellation Blvd., Suite 1850
                                        Los Angeles, California 90067
                                        (310) 201-4728

                                        *Attorneys for Defendant, DAVE INC.*

## <u>CERTIFICATE OF WORD COUNT</u>

I, Daniel T. Brier, hereby certify in accordance with Local Rule 7.8(b)(2) that

Defendant DAVE, Inc.'s Memorandum of Law in Support of Motion to Compel

Arbitration and Stay or Dismiss Proceedings is in compliance with L.R. 7.8(b)(2).

The brief contains 4,574 words as computed by Microsoft Office Word and 414

words in two images that were manually counted, for a total of 4,989 words.


/s/ Daniel T. Brier
Daniel T. Brier


Date:  May 10, 2023

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel T. Brier, hereby certify that I served the foregoing Memorandum of Law in Support of Motion to Compel Arbitration upon all counsel record via the Court's ECF system on this 10th day of May 2023.

/s/ Daniel T. Brier

Daniel T. Brier